THE PEOPLE ex rel. THE EDISON ELECTRIC ILLUMINATING
COMPANY of New York, Appellant, v. EDWARD P. BARKER
et al., as Commissioners of Taxes, etc., Respondents.

*It seems,* the provision of the New York Consolidation Act, providing
for a review or correction, on the merits, by certiorari, of any decision
or decisions of the commissioners of taxes and assessments, does not
authorize the court to review a decision of those officers upon questions
of value or appraisement, where they proceeded upon information or
evidence tending to support their decision.

Where, however, in the case of a corporation liable to taxation under the
provisions of the Revised Statutes (1 R. S. 417, § 15) providing for tax-
ing corporations, as amended in 1857 (Chap. 456, Laws of 1857), the evi-
dence as to the actual value of the capital stock and surplus of the
corporation is uncontradicted and is full and complete, so that all the
the necessary facts are established beyond any fair dispute, and there is
no reason appearing for doubting the truth of such evidence, a refusal
of the commissioners to decide in accordance with it amounts to legal
error, and may be reviewed and corrected on certiorari.

Where, under the provision of said Consolidation Act (§ 820), authorizing
a person aggrieved by the assessed valuation of his property to make
application to have the same corrected, a corporation assessed made
such application, and in accordance with the requirement of said pro-
vision, making it the duty of the commissioners to examine the appli-
cant on oath, the treasurer of the company made written answers on
oath to printed questions submitted to it, which answers were full
responses to the questions, *held,* that in the absence of any request by
the commissioners for further information, they were not authorized to
question the information actually given, on the ground that it was not
as full as it might have been; nor could they avoid the effect of the
information by stating in a return to a writ of certiorari that they had
made "due inquiry as to the value of the capital owned by the relator,"
and had come to a decision contrary to the information so given; that if
they had made inquiries other than the questions so asked, and had
obtained and acted upon other information than the answers thereto,
they should, when required by the terms of the writ, give the court
some information as to the nature, extent and direction of such inquiries,
and should state what the information was they so obtained.

*People ex rel. E. E. I. Co.* v. *Barker* (68 Hun, 513), reversed.

(Argued June 5, 1893; decided October 3, 1893.)

APPEAL from order of the General Term of the Supreme
Court in the first judicial department, made April 18, 1893.

which affirmed an order of Special Term dismissing a writ of certiorari.

The nature of the proceeding and the facts, so far as material, are stated in the opinion.

*Charles E. Miller* for appellant. The papers upon which the writ was granted can be considered as establishing as facts such matters as are admitted, or as to which the return is silent. (*People* v. *Comrs.*, 106 N. Y. 64; *People* v. *Dains*, 38 Hun, 43, 46.) The uncontradicted and unquestioned evidence of the relator is conclusive upon the commissioners of taxes, there being no other evidence before them. (*Morewood* v. *Hollister*, 6 N. Y. 309; *People* v. *Reddy*, 43 Barb. 539; *People* v. *Howland*, 61 id. 273; *People* v. *Oswego*, 5 Hun, 117.) The decisions at Special and General Term were based upon the ground that the evidence of relators was not sufficient to establish the value of their assets, and this is the main question before the court. It is respectfully submitted that the courts below were in error. There is no statutory form of evidence prescribed, and the test is whether the relators made a *prima facie* case, which would have entitled them on a trial to a verdict in the absence of any other evidence. (Code Civ. Pro. § 854; Laws of 1882, chap. 410, § 820; Laws of 1880, chap. 269, § 6; *People* v. *Bd. of Assess.*, 40 N. Y. 154.) Upon the evidence before the commissioners, appellant is entitled to a cancellation of the assessment. (*People* v. *Coleman*, 120 N. Y. 433.) The patent rights owned by the company, and which, as appeared by the testimony, were issued in payment of $2,250,000 of the capital stock, are not assessable as personal property. (*Boreel* v. *Mayor, etc.*, 2 Sandf. 552; *Smith* v. *Mayor, etc.*, 68 N. Y. 552; *McCullough* v. *State*, 4 Wheat. 316; *Weston* v. *City of Charleston*, 2 Pet. 449; *Patterson* v. *Kentucky*, 97 U. S. 501; *Helms* v. *F. N. Bank*, 43 Ind. 167; *Cranson* v. *Smith*, 37 Mich. 309; *Holliday* v. *Hunt*, 70 Ill. 109; *Crittenden* v. *White*, 23 Minn. 24.) In ascertaining the amount to be assessed, the indebtedness is to be deducted from the gross assets.

1893.]   People ex rel. E. E. I. Co. *v.* Barker et al.   57

N. Y. Rep.]      Opinion of the Court, per Peckham, J.

(*People* v. *Ferguson*, 38 N. Y. 89; *People* v. *Comrs.*, 46 How. 315; *People* v. *Comrs.*, 31 Hun, 32; *People* v. *Asten*, 100 N. Y. 597, 612; Laws of 1885, chap. 411, § 4; *Easton* v. *Pickersgill*, 55 N. Y. 310; 64 id. 656.) If the commissioners had deducted the indebtedness they should have so returned the fact. From the return no other conclusion can be found than that they valued all the property of the corporation in valuing the stock, and made no allowance except what was deducted. This was error. (*P. M. S. Co.* v. *Comrs.*, 46 How. Pr. 315, 345.) The indebtedness is to be deducted from the taxable personal property. (*People* v. *Ryan*, 88 N. Y. 142; Laws of 1885, chap. 411, § 4.) The assessed value of real estate is in theory its actual value. (*People* v. *Comrs.*, etc., 104 N. Y. 240.) It is immaterial whether the assessed value is the actual value or not, so long as for the purposes of taxation of capital stock the same amount is adopted in ascertaining the value of the gross assets and in the deduction therefrom to arrive at the value of the personalty. (*McMahon* v. *Palmer*, 102 N. Y. 176.)

*George S. Coleman* for respondent. A party complaining of an assessment must show affirmatively and conclusively that he has been aggrieved. The court will not declare an assessment excessive or illegal where the record discloses merely a conflict of judgment as to values, and leaves the matter in doubt. (*People ex rel.* v. *Davenport*, 91 N. Y. 574; *People* v. *Asten*, 100 id. 597, 600; *People* v. *Comrs.*, 104 id. 240, 246, 247; *People ex rel.* v. *Coleman*, 126 id. 433.) The question of value having been fairly in dispute, the determination of the court below is final and conclusive. (*People ex rel.* v. *Hicks*, 105 N. Y. 198.)

Peckham, J. The relator is a corporation, organized under the laws of the state of New York, and doing business in the city of New York. The defendants are the commissioners of taxes in that city, and, as such, they assessed the relator on the value of its personal property for the year 1892 at the sum of

58    People ex rel. E. E. I. Co. *v.* Barker et al.    [Oct.,

Opinion of the Court, per Peckham, J.     [Vol. 139.

$4,500,000. This was the amount of its capital actually paid in and secured to be paid in. No deduction was made of the assessed value of any real estate paid for by the company, nor of the amount of its stock, if any, belonging to the state, or to any literary or charitable institution, as provided for by the statute. I think it may be assumed the assessment was thus made because of the failure of the relator to send to the commissioners the written statement provided for in the law, and from which an assessment in conformity with the facts would be more likely to result.

After such assessment was made, and while the books were open for examination and correction, the relator, considering itself aggrieved by such assessment, applied to have the same corrected, pursuant to the provisions of section 820 of the New York Consolidation Act. At the time of such application, the relator submitted to the defendants a statement in writing and under oath. This statement is in the record, and shows the following matters :

| | |
|---|---:|
| The total gross assets, exclusive of patent rights, value undetermined ............. | $1, 108, 865 00 |
| Capital stock actually paid in or secured to be paid in................................ | 4, 500, 000 00 |
| Amount of surplus earnings................ | ............. |
| Rate of dividend for last year, or last annual dividend, 4 per cent.................... | |
| Indebtedness in detail as follows : | |
| Bills and accounts payable................ | 440, 503 00 |
| Bonds .................................... | 2, 250, 000 00 |
| | $2, 690, 503 00 |

Then followed a statement of the assessed value of each portion of real estate owned by the company, by ward and ward map numbers, and aggregating $698,500.00.

The statement further showed that the stock had hardly an established market value, although there had been a few sales during the year, averaging about 75, the par being 100. It

1893.] People ex rel. E. E. I. Co. *v.* Barker et al.    59

N. Y. Rep.]    Opinion of the Court, per Peckham, J.

was also stated the value of the stock depended greatly upon the value of the patent rights, the validity of which was in litigation, and that an adverse decision would very seriously affect the value of the stock; that $2,250,000 of the capital stock had been issued for patent rights to Mr. Edison, and those patents were owned by the company. In estimating the value of the assets it was stated that, so far as applicable, the valuation of the tax commissioners had been adopted. This statement was sworn to by the treasurer of the corporation.

After its presentation to and examination by the tax commissioners, the assessment against the relator was reduced to the sum, for taxable purposes, of $1,000,000.

The relator, still feeling aggrieved, sued out a certiorari for the purpose of obtaining a review of the assessment, and claimed that from the facts appearing and which it alleged were uncontradicted, it was not liable to be assessed for any amount whatever. The writ commanded the defendants to return, among other things, and besides the written statement above alluded to, " any other evidence or information, if any, before you or considered by you in arriving at your decision, and if there were no other evidence or information, that you so state."

The defendants returned no other evidence or information than the statement mentioned, but the return did not otherwise and in terms negative the existence of some other information considered by them. After reciting the fact that the relator filed the written and sworn statement with them, the defendants in their return stated that " thereupon we examined into the complaint so made by the relator, and considered such statement in writing, and having made due inquiry as to the value of the capital owned by the relator, we fixed the amount of such value subject to assessment for the purpose of taxation at the sum of $1,698,500, which we believed to be just," and after deducting the assessed value of the real estate, a balance of $1,000,000 for taxable purposes was left, which the defendants " decided to be the sum for which the said capital stock, to wit, the capital stock owned by the relator,.

was lawfully assessable for taxation for the year 1892," and the assessment was, therefore, reduced from the original sum of $4,500,000 to that amount.

The application of the relator which it made to the defendants was under section 820 of the Consolidation Act, and was in relation to the assessed valuation of its personal estate. The section provides that the applicant shall be examined under oath by the commissioners, and they are to fix the amount of the assessment as they may believe to be just. The record contains no other examination under the oath of the applicant than the sworn statement already described, and it may properly be assumed from the heading, form and contents of that statement, that it was made when the relator made its application, and at the instance of the commissioners, and in answer to their questions printed on blanks for that purpose. The section of the statute requires the commissioners to declare their decision within a certain time. This decision, it need scarcely be said, is not to be capricious, arbitrary or fanciful. It must be based upon some evidence or facts and should be the result of the exercise of judgment and discrimination. This would naturally be so, and the statute in the succeeding section (821) provides for a certiorari to review or correct on the merits any decision or action of the commissioners in such matter. This does not mean that the court is to place itself in the position of an assessor and review the decisions of those officers upon questions of value or appraisement where the officers proceeded upon information or evidence tending to support their decision. The court generally will not look into questions of fact as to the amount or value of the personal estate of a corporation or individual. These are questions for the judgment of the assessors and their decisions will ordinarily be sustained. This doctrine has been advanced and decided in several cases, among the latest of which is *People ex rel. Rome, etc., R. R. Co.* v. *Hicks* (105 N. Y. 198).

In the case of a corporation liable to be taxed upon its capital and surplus, as the relator is, the inquiry is as to the actual value of such capital and surplus. (*People ex rel.*

*Union Trust Co.* v. *Coleman,* 126 N. Y. 433.)   When the evidence upon the subject is entirely uncontradicted and is full and complete so that all the necessary facts are established beyond any fair dispute, and if there can be but one inference resulting therefrom, and there is no reason appearing for doubting the truth of such evidence, a refusal on the part of the assessors to decide in accordance with it, would be merely capricious and arbitrary, amounting to a legal error, and it should not be sustained.

The statement verified by the treasurer of the relator is unfavorably criticised on the ground of its generality.   It is said to be a wholesale assertion, no details being given and from which it is impossible for anyone to determine the exact situation of the property of the relator or its real value, and hence the relator has failed to show any error in the decision of the commissioners.

Under the statute the relator made application to correct the assessment actually made in regard to its personal estate. It, therefore, became the duty of the commissioners to examine the applicant on oath.   This was done by examining the treasurer, and such examination was made by obtaining written answers to printed questions submitted to the applicant.   The answers were full responses to the questions that were put, and if the commissioners desired anything further, or more in detail, or some explanation of data actually furnished, in order to come to a decision, some request should have been made or some question put to the applicant calculated to elicit the desired information.   In the absence of any such demand, and while the answers to the questions actually put are reasonably plain and full, the commissioners should not be permitted thereafter to question the data actually given on the ground that they were not as full as they might have been.   If they were as much in detail as was requested and if no fault were then found with the answers on any ground of insufficiency of information upon a subject embraced in an inquiry, it seems to me that justice and fair dealing require the acceptance of the information given as containing the

truth, unless there be some reason founded upon other facts established by competent evidence to cause the commissioners to disbelieve the information given by the applicant or in its behalf and under oath.   (126 N. Y. 433, *supra*.)

The commissioners cannot, under such circumstances, avoid the legal effect of the information thus given by stating in a return to a writ of certiorari that they had made " due inquiry as to the value of the capital owned by the relator," and had come to a certain decision in regard to it.   If they made inquiries other than the questions contained in the written statement, and upon which they acted, they should, when required by the terms of the writ of certiorari, give the court some information as to the nature, extent and direction of such inquiries, and they should state what the information was which they obtained and upon which they based their decision.   Otherwise the commissioners might always return that they had made " due inquiry " and had come to a certain decision, and the court would be powerless to give relief notwithstanding the decision might be clearly against the evidence which was sworn to and uncontradicted on the part of the applicant, and, if believed, entirely sufficient to warrant and demand the correction claimed by such applicant.

In this case all the questions which the commissioners placed in their printed blanks were answered by the treasurer, and, so far as the record shows, to the satisfaction of the commissioners.   At least no demand for further or more detailed information appears to have been made, and we think that the commissioners, in the absence of any reason for disbelieving it, were bound, under these circumstances, to assume the truth of the information thus obtained.   We think for these reasons it must be taken as true that when the statement was made the total gross assets of the relator, exclusive of patent rights (whose value was undetermined), was $1,108,865 ; that its capital actually paid in or secured to be paid in was $4,500,000 ;  that it owed in the shape of bills and accounts payable $440,503, and in the shape of bonds, $2,250,000 ; that the assessed value of its real estate paid for by it was $698,500,

and that it had issued $2,250,000 of its capital stock to Thomas A. Edison in payment for patent rights owned by him and transferred to the company for that consideration. The question is, what do these facts prove as to the actual value of the capital of the relator? It had no surplus, as the statement showed.

The subject of assessment was the capital of the corporation. The assessment must by law be at the actual value of the subject assessed, and when that is known and ascertained no other value can be substituted for it. (126 N. Y. 433, *supra*, at page 448.) If facts sufficient were disclosed in this statement from which this value could be accurately discovered, these facts must be conclusive on the question, assuming them to have been sufficiently proved by uncontradicted evidence, as already set forth, and that there was no reason which appeared in evidence for disbelieving them. Under such circumstances, and for this purpose of an assessment, the market price of the shares of the stock into which the capital is divided is not material, nor the amount of the dividends which may have been paid by the company. These are not the subjects of taxation under the law relating to the assessment of corporations and such facts are immaterial when the exact data are given from which the value of the capital can be accurately ascertained. In the absence of these exact data the facts just stated, as well as others, may be looked at for the purpose of obtaining from them as well as the nature of the facts will permit, what is the value of the capital and surplus, if any there be. Outside of its patents, the total gross assets of the relator as above stated included all its capital. These gross assets, it is thus seen, did not equal the amount of its indebtedness ($2,690,503), saying nothing of the deduction to be made on account of the assessed value of its real estate ($698,500).

This indebtedness must in the nature of things be taken into consideration in arriving at the value of the capital of the relator. And when it is seen that the indebtedness of a corporation is double the amount of all its assets, it follows upon

the system adopted by the state for the assessment of corporations that the actual value of the capital of such a corporation is zero. In other words, capital has no value for assessment and taxation. If it be assumed that the portion of the capital of the relator invested in patents is not taxable, the case of the relator is clearly made out and the commissioners should not have made any assessment whatever against it.

The relator asserts that the portion of its capital invested in patents is not taxable. It bases such claim upon two grounds : One that the state statute does not provide for such assessment, and the other that patents cannot be assessed or taxed by or under state authority. We think the state statute reaches the case of patents where held by corporations, if such patents are not otherwise exempt from taxation. In defining the terms " personal estate " and " personal property " as used in the chapter on taxation (Chap. 13 of the first part of the Revised Statutes), it is said that such terms shall include among other things "such portion of the capital of incorporated companies, liable to taxation on their capital, as shall not be invested in real estate." (1 R. S. 387, § 3.) This would cover the case of any portion of the capital of a corporation which was invested in patents. The claim for exemption must be founded upon the second ground above stated, viz., that patents cannot be taxed by or under state authority.

A tax upon the actual value of the capital of a corporation is a tax upon the property in which such capital may be invested, and if any of such property is exempt from taxation the value thereof must be excepted from any assessment of the capital. (*People ex rel. v. Commrs. of Taxes & Assessments*, 23 N. Y. 192, per DENIO, J., at page 195 ; *People ex rel. v. Commrs.*, 2 Black [U. S.], 620, 629 ; *Bank Tax Cases*, 2 Wall. 200 ; *Van Allen v. Assessors*, 3 id. 573.) The assessment of the shares in national banks against the individual owners, where the capital of such banks had been invested in bonds of the United States, was sustained under the act of congress, for the reason that the shareholders were not the owners of the bonds, but the corporation was, and the corporation was

not taxed by reason of an assessment upon its shareholders. (*Van Allen* v. *Assessors*, 3 Wall. *supra*.)

This question as to the validity of the taxation by or under state authority, of patents issued by the United States for new and useful inventions, is a most important one. We do not think it necessary to decide it in this case, for the reason that we regard the assessment as clearly erroneous even upon the assumption that the patents are taxable. The statement of the treasurer shows that the patents, assuming them to be of the par value of the stock which was issued in payment for them, viz., $2,250,000, would make the total assets of the relator over $3,358,865. The indebtedness amounted to $2,690,503, and the assessed value of the real estate to the further sum of $698,500, or a total amount of $3,389,003, which is over $30,000 more than the total assets of the relator, including the patents. This clearly shows that an assessment of $1,000,000 upon the capital of the relator must be the result of an erroneous process for arriving at the value of its assessable property.

It is said, however, that as the treasurer stated in his verified statement that in estimating the assets he had adopted, *so far as applicable*, the valuation established by the tax commissioners, the rest of the valuation must be that of the treasurer, and that the "due inquiry" made by the defendants simply resulted in a difference of opinion as to the values between the treasurer of the relator and the assessing officers, and the latter are the persons to make the assessment.

I have already alluded to the position of the defendants as to their having made "due inquiry," and we must for the purpose here in controversy assume that the value of the assets, exclusive of the patents, was as stated by the treasurer. As to the value of the patents it is not stated in so many words what such value was. It is, however, stated that stock to the amount of $2,250,000 was issued in payment for the patents. It is also stated that their validity was in litigation and not yet decided, and the value of the stock of the relator depended largely upon the value of the patents, which consti-

tuted to a great extent its assets, outside of the real estate and conductors.

Upon these facts, I think while it may be said the value of the patents was to a certain extent undetermined and contingent, there was nothing whatever upon which to base a finding that their value was over a million dollars beyond the par value of the stock given in payment for them. This would have to be decided in order to uphold the assessment, if we are to take the value of the other assets as stated by the treasurer. The sworn statement tends strongly to the view that the patents, under the existing circumstances, were not of a greater value than the par of the stock issued for them, and they should not be assessed at more than that. We might almost take judicial notice that the par value of stock issued by a corporation in payment for patents to be transferred to and used by it, is never less than the real value of such patents under highly favorable views thereof. The fact that stock of the par value of $2,250,000 had been issued for the patents in question, is quite strong evidence that they were not in reality worth more than the par value of the stock so issued. The fact that their validity was in dispute adds force to the correctness of the conclusion. At any rate the commissioners had the opportunity of examining the officer on oath, and they availed themselves of the same and asked all the questions they desired to and they were all answered, and if they failed to ask as to the exact value of the patents, they ought not to be heard to complain so long as the facts actually proved by the relator in regard to them were sufficient to justify no other inference than that the value was certainly not in excess of the par value of the stock issued in payment for them.

The assessment actually made has, in our opinion, no evidence to support it. Upon no view of the facts actually proved, and which are wholly uncontradicted, and which there is no reason to disbelieve, so far as there is any evidence, can the assessment be sustained, and it is plain that either some radically erroneous theory for an assessment has been adopted by the commissioners, or that their decision is wholly without

evidence to support it, and that their action has resulted in an assessment which is illegal and cannot be sustained in our view of the law.

In this case we are not differing with the assessors upon a mere question of values. The evidence is such as to show that there is no basis for the assessment if the sworn statement of the treasurer be accepted, and under the circumstances we think it appears that it should have been.

Our decision in no way offers any facilities for the escape of corporations from proper assessment and taxation. If the defendants herein had information which warranted an assessment such as they made, notwithstanding the sworn statement, they should have returned that information, and thus have shown to the court what it was upon which they acted in making the assessment they did. If the statements given under oath by the applicants are not sufficient in detail or otherwise, then more questions may be asked and the examination continued to the satisfaction of the commissioners. If they have any fair reason or ground for disbelieving the sworn statements, they are not bound by them. But they cannot capriciously reject or disregard them and assess in total defiance of the facts thus sworn to.

Without passing upon the question whether patents issued by the United States as above described are taxable or not, but in this case assuming they are taxable, we think the assessment in question is illegal and must be set aside, and to that end the orders of the General and Special Terms must be reversed. We think we ought not to allow costs in such cases, because the defendants are public officers acting in the *bona fide* discharge of their duties, and they should be protected in such discharge from any fear of costs consequent upon an honest mistake.

All concur.

Order reversed.