THE PEOPLE ex rel. THE EDISON GENERAL ELECTRIC COMPANY, Appellant, *v.* EDWARD P. BARKER et al., Commissioners of Taxes, etc., Respondents.

141 251
144 102

141 251
146 314

141 251
j165 324

141 251
78 AD²315
78 AD²316

The provision of the Revised Statutes prohibiting a corporation from declaring dividends, except from surplus profits (1 R. S. 589, § 1), does not apply to a corporation organized under the General Manufacturing Act (Chap. 40, Laws of 1848); the trustees of such a corporation have power to declare and pay dividends, at least until some judicial restraint intervenes to prevent, although there are no surplus profits, and in so doing simply subject themselves to the penalty imposed by the act (§ 13).

Where, in proceedings by certiorari to review the action of the commissioners of taxes and assessments of the city of New York, in assessing such a corporation, it appeared that the assessment was based solely upon statements of the relator in answer to questions put by the commissioners, which statements showed that the capital was impaired and that the indebtedness of the company exceeded the value of its assets exclusive of real estate, and did not disclose any fact or circumstance justifying a disbelief of the answers made, except that a dividend had been declared and paid shortly previous, *held*, that this did not authorize a disbelief in the statement of the impairment of capital, and, in the absence of any request on the part of the commissioners for further information, did not justify them in imposing a tax, as the statements, if accepted as true, showed that there was no basis therefor.

(Argued January 9, 1894; decided February 9, 1894.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made November 10, 1893, which affirmed an order of Special Term dismissing a writ of certiorari brought to review the action of the commissioners of taxes and assessments of the city of New York in assessing and taxing the relator.

The relator is a corporation organized under the General Manufacturing Act, with a capital stock actually paid in, or secured to be paid in, of $14,964,900, and was assessed by defendants for the year 1892 at $15,000,000. The relator applied, under section 820 of the Consolidation Act, to have the assessment corrected, and submitted to defendants statements in writing in answer to questions of the commissioners,

which were sworn to by its treasurer, and were substantially
as follows:

" Total gross assets, exclusive of patent rights,
    value unknown......................    $9,459,500
" Capital stock actually paid in, or secured to
    be paid in .........................,.............    14,964,900
" Rate of dividend for last year.·............    8%
" Indebtedness, investments in real estate and
    stocks of other corporations.............    13,676,634 "

Defendants thereupon reduced the assessment to $2,670,000.

*Charles E. Miller* for appellant.   The relator is a corpora-
tion to which the provisions of the Revised Statutes are not
applicable.   (Const. art. 8, § 1; Laws of 1857, chap. 422,
§ 7.)   The provision in the Revised Statutes that it shall not
be lawful for the directors to make dividends, except from the
surplus profits arising from the business of the corporation, is
not contained in the act of 1848.   The object of this provision
is to prevent the dissipation of the fund designed for the
security of creditors.   (*Rorke* v. *Thomas*, 56 N. Y. 559, 564.)
A corporation of the nature of relator may lawfully declare
and pay dividends out of the profits of its business, although
its gross assets are less in value than its capital stock.   (2 R.
S. [8th ed.] 1554; Morawetz on Corp. §§ 440, 441; Laws of
1853, chap. 333, § 2; Laws of 1854, chap. 232.)   In the state-
ment of gross assets submitted to the tax commissioners
the franchise, good will and dividend earning capacity of
the relator are not included.   But these are all proper
items in estimating the value of the property of a corpora-
tion in deciding upon the propriety of payment of dividends.
(*People* v. *Coleman*, 126 N. Y. 437; *People* v. *Comr. of
Taxes*, 103 id. 240; *Karnes* v. *R. & G. V. R. R. Co.*, 4 Abb.
[N. S.] 107.)   The doctrine of *stare decisis* is applicable.
(*People* v. *Barker*, 139 N. Y. 55.)   The indebtedness,
$4,740,174, must, in the nature of things, be taken into con-
sideration in arriving at the value of the capital of the relator.

(*People* v. *Barker*, 139 N. Y. 63.)  The assessed valuation of the real estate, $802,000, is also to be deducted.  (Laws of 1875, chap. 456, § 3.)  The amount invested in stocks of other corporations which are taxed upon their capital, $3,526,800, is to be deducted.  (2 R. S. chap. 13, § 1; *People* v. *Comrs. of Taxes,* 4 Hun, 595; 62 N. Y. 630; *People* v. *Comrs. of Taxes,* 5 Hun, 200; 64 N. Y. 541; *People* v. *Campbell,* 138 id. 543.)  Eleven million, one hundred and eighty-four thousand, nine hundred and seventy-four dollars, being $1,399,474 more than the value of the gross assets, inclusive of $326,000 of patent rights, should be deducted.  (*People ex rel.* v. *Comrs. of Taxes,* 4 Hun, 595; 23 N. Y. 223; *People ex rel.* v. *Barker,* 139 id. 126.)  The patent rights are not assessable.  (*McCullough* v. *State,* 4 Wheat. 316; *Weston* v. *City of Charleston,* 2 Pet. 449; *Patterson* v. *Kentucky,* 97 U. S. 501; *Holmes* v. *F. N. Bank,* 43 Ind. 167; *Cranson* v. *Smith,* 37 Mich. 309; *Holiday* v. *Hunt,* 70 Ill. 109; *Crittenden* v. *White,* 23 Minn. 24.)

*David J. Dean* for respondent.  The return does not show that the decision of the commissioners upon the value of the relator's assets was unsupported by the evidence before them, and, therefore, that decision cannot be set aside.  (*M. F. Ins. Co.* v. *Comrs. of Taxes,* 76 N. Y. 64; *People ex rel.* v. *W. F. Ins. Co.,* 91 id. 580; *People* v. *Aster,* 100 id. 600; *People ex rel.* v. *Comrs. of Taxes,* 104 id. 246; *People* v. *K. F. Ins. Co.,* 107 id. 543; *People ex rel.* v. *Hicks,* 105 id. 198.)

Finch, J.  We are unable to distinguish this case from that of *People ex rel.* v. *Barker* (139 N. Y. 55).  In both cases the returns of the tax commissioners were identical except as to the respective amounts and values, and showed that the assessments rested upon the statements of the relators made in answer to questions put by the assessors : in both those statements established that there was no basis for a tax if they were accepted as true: in both the value of patents was described as unknown, but the cost in stock issued was disclosed : and in both there was developed no fact or circumstance justifying a disbelief of the answers made, except that

in each case a dividend had been declared at some possibly recent period.    In this case the dividend was eight per cent, and in the earlier case four per cent, and we there declared the fact of a dividend paid to be immaterial under the existing circumstances.    The legitimate effect of such a fact upon the action of the assessing officers was not then much considered, but is now put in the front of the controversy, and claimed to furnish a decisive reason for the disbelief of the assessors in the statement furnished by the relator.

We might safely rest upon the authority cited, but since the point now urged was not then seriously argued or discussed, and is pressed specially upon our attention, we deem it proper to give it some degree of consideration.    It proceeds upon an inference or presumption.    The argument is that under the Revised Statutes any declaration of a dividend except out of surplus is forbidden, since otherwise the capital is necessarily impaired by the distribution to stockholders : that no such violation of the law is to be presumed, but rather a due compliance with its terms : that a presumption of such compliance arises from the fact of a dividend declared and paid, and so the lawful and necessary inference is that the capital has not been impaired, but that over and above it the necessary surplus had been accumulated : that such inference is inconsistent with and contradicts the statement made, showing the actual capital to have fallen from fifteen millions to about one-third of that amount : and so the commissioners had a right to disbelieve that statement and fix the value of the capital upon their own judgment.    There are two answers to this contention, one of which questions the presumption, and the other at least balances and nullifies it.

In the first place, the relator was incorporated under the general act of 1848, and the prohibition of the Revised Statutes does not apply.    That general act has its own prohibition and attaches its own sole and peculiar penalty, and one which leaves the companies in the matter of making dividends with an equal if not greater liberty.    (*Excelsior Co.* v. *Lacey*, 63 N. Y. 422.)    That penalty, and the only one imposed, is that the

trustees shall become liable for all debts existing and contracted during their term of office, (Laws of 1848, chap. 40, § 13), and the practical effect follows that for the security of creditors the liability of the trustees is put in the place of the impairment of capital effected by the dividends. If the trustees choose to bear that responsibility they have power to declare and pay the dividend though no surplus exists beyond the capital, at least, until some judicial restraint intervenes to prevent. It is probable that many such dividends are declared and paid, and their declaration in a given case scarcely justifies an inference that the capital necessarily remains intact and undiminished in actual value. The presumption if it exists is extremely slender and weak.

But what there is of it is rebutted by another presumption springing from the facts which is that against the commission of fraud or crime. Here the treasurer of the company has sworn to a shrinking of the capital from fifteen millions to about nine millions, further chargeable with nearly five millions of debts, and obviously could not have honestly made that statement if in truth there had been no shrinkage of values at all, and so the two possible presumptions may be said to balance and neutralize each other.

These suggestions serve to show that the duty of the tax commissioners is not to subordinate facts, fairly disclosed and uncontradicted, to the influence of presumptions amounting to little more than a guess or possibility, but to deal with them fairly and intelligently. These officers are armed with power to ascertain the truth of answers given to their formal inquiries, and should always do so when the means of investigation are put before them. Here the facts for which they asked, and all that they asked, were furnished under the oath of the relator's treasurer. If they were dissatisfied with his valuation of assets in gross they could have required them to be given in detail and so been enabled to judge of the fairness or unfairness of the valuation; but they were not justified in assuming that the treasurer, for the purpose of evading taxation, had falsely underestimated the assets, because of a recent divi-

dend, the declaration of which did not necessarily involve the fact of an unimpaired capital. I think, therefore, that we were right in saying in the case cited that the declaration of a dividend even if sufficiently recent is an immaterial circumstance where the actual facts are furnished to the full extent required which show the real amount and value of the capital. Those facts may be investigated, but must not be disregarded to make room for doubtful presumptions.

The orders of the General and Special Terms should be reversed, without costs.

All concur.

Orders reversed.