# Denver Union Water Co. v. Board of Co. Com'rs of Araphahoe Co.

*District Court of Arapahoe Co., April 11, 1898, No. 25894.*

JOHNSON, J., delivered the opinion of the court.

The petition alleges that the Denver Union Water Company, as a corporation, filled out and returned its tax schedule for the year 1896, to the county assessor as required by law; that, thereafter, the county assessor, of his own accord, added to said schedule the word "franchise," and assessed it at a valuation of $2,000,000, claiming that it had been wrongfully omitted by the petitioner from its tax schedule, whereupon the company appealed to the county commissioners for a correction of the assessment, and the county commissioners after a hearing, reduced the amount to $300,000. From this finding, petitioner bring its appeal to this court for a review.

The contention is, that there is no law in this state providing for the assessment and taxation of franchises also, that the attempted valuation is unreasonable and unjust. A general demurrer has been filed to the petition, and the court has been asked to pass upon the law of the case. In doing this, however, we are somewhat in the dark as to the character and nature of the franchise sought to be taxed, and we are not informed of its character, from the petition; but this matter having been argued extensively by counsel, referring to certain contract relations between the Denver Union Water company and the City of Denver, and the court having had occasion to examine this contract to considerable extent in other causes, we will assume to give our view of this franchise question in the light of the above information.

Some time in the year 1890, the Denver Water Company, predecessors of the Denver Union Water Company, made and entered into a contract with the City of Denver in which it was given the right to supply water for domestic purposes to the inhabitants of the city at certain schedule rates, in consideration for which it received certain franchise grants from the city, including the right of way in, along and upon its streets and alleys for the

purpose of laying its mains and pipes and operating the same. Also, the right to furnish the inhabitants of the city with water and collect toll thereon, both of which practically give the company a complete monopoly of the business.

A franchise is defined to be a special privilege conferred by a government upon individuals or corporations which does not belong to the citizens of the country generally, of common right, and in this instance, we are of the opinion that grants obtained from the city as above mentioned, are franchise rights. The City of Denver under its charter, is endowed with certain governmental functions, such as protecting and controlling its public streets and highways, and the health and safety of its inhabitants, and when it delegates this duty to private individuals or corporations, as it has a right to do under its charter, it does so with the understanding that they will act for the city in the performance of these public duties, and in case of their neglect of refusal to do so, the law will compel them so to act.

The next question to be determined is, whether or not franchises of the above character are property, as defined under the revenue act of the constitution and laws of this state.

Section 3, article 10 of the constitution provides that: "All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and it shall be levied and collected under general laws, which shall prescribe such regulation as shall secure a just valuation for taxation of all property, real and personal."

Following this provision the statute provides that "all property, both real and personal, within the state, not expressly exempt by law, shall be subject to taxation." (See 2 Mills St. § 3765.) Following this provision the statute defines real and personal property as follows:

"The term real estates includes, first, all lands within the state to which title, or the right to title, has been acquired from the government of the United States. Second, all mines, minerals and quarries in and under the land, and all right and privileges appertaining thereto." "The term personal property includes everything which is the subject of ownership not included within the term real estate." (2 Mills Ann. St. § 3782.)

I think the best authorities hold that franchises above described should not be classified as real estate for taxation purposes, but as personal property, and so it is under this last head that we shall try and ascertain whether or not personal property as above defined is broad enough to include franchises.

There is no doubt in my mind that the franchises above mentioned are special privileges, and valuable rights. They form a part of the assets of the corporation. Upon their valuation a great deal of its capitalization depends; also, they are permanent and fixed rights, not to be altered or taken away, except by due process of law. They may be sold and transferred with the corpus of the estate to which they appertain, should such transfer take place. Though intangible in character, they give life and vigor to the very existence of the corporation and form the principle force that establishes the unity and makes the entire plant of the highest value. They may have more distinct and active value as property when used by corporations of this character than by private individuals, for the reason that private individuals seldom, if ever, use or operate their property as a unit in amassing of capital, while the contrary is true of corporations.

I know of no better language to express my views than that used by Judge Brewer in the case of Adams Express Company v. the Ohio State Auditor, found in Vol. 17, Supreme Ct. Reporter, at page 605, wherein he treats of this feature of taxation as follows: "But this conten-

tion practically ignores the existence of intangible property, or at least, denies its liability for taxation. In the complex civilization of today a large portion of the wealth of a community consists in intangible property, and there is nothing in the nature of things, or in the limitations of the federal constitution, which restrains a state from taxing at its real value such intangible property. * * *

"It matters not in what this intangible property consists, whether privileges, corporate franchises, contracts or obligations; it is enough that it is property, which though intangible, exists, which has value, produces income and passes current in the markets of the world. To ignore this intangible property, or to hold that it is not subject to taxation at its accepted value, is to eliminate from the reach of the taxing power a large portion of the wealth of the country. Now, whenever separate articles of tangible property are joined together, not simply by unity of ownership, but in a unity of use, there is not infrequently developed a property, intangible though it may be, which in value exceeds the aggregate of the value of the separate pieces of tangible property. Upon what theory of substantial right can it be adjudged that the value of this intangible property must be excluded from the tax lists, and the only property placed thereon, be the separate pieces of tangible property. * * * To say that there can be no such tangible property, that it is something of no value, is to insult the common intelligence of every man. * * * It is a cardinal rule, which should never be forgotton, that whatever property is worth for the purposes of income and sale, it is also worth for the purposes of taxation. * * *

"Suppose an express company is incorporated to transact business within the limits of a state, and does business only within such limits, and for the purpose of transacting that business purchases and holds a few thousands of dollars' worth of horses and wagons, and yet it so meets

the wants of the people dwelling in that state, so uses the tangible property which it possesses, so transacts the business therein, that its stock becomes in the markets of the state of the actual cash value of hundreds of thousands of dollars; to the owners thereof, for the purposes of income and sale, the corporate property is worth hundreds of thousands of dollars. Does substance of right require that it shall pay taxes only upon the thousands of dollars of tangible property which it possesses? Accumulated wealth will laugh at the crudity of taxing laws which reach only the one and ignore the other; while they who own tangible property, not organized into a single producing plant will feel the injustice of a system which so misplaces the burden of taxation."

I have quoted quite extensively from the above opinion, for the reason that it sets forth broad and comprehensive views of this question, fortified by a high sense of right and justice in the mind of every intelligent and wellthinking man.

Counsel, however, call this alleged franchise a contract right, which the company has paid for, and is no more subject to taxation than ordinary private contracts between individuals.

This contention is untenable when examined in the light of the contract with the city, for this contract not only contains private obligation, but also contains the public duty heretofore mentioned.

Again, counsel contends that franchises are not taxable, because the law has not particularly pointed out and designated them as property on the taxing schedules. While there is no express statute on this particular subject, yet I find that franchises of railroad companies are assessed and taxed by the state board of equalization (3 Mills' Ann. St. § 3805). And if it is proper to tax franchises relating to railroad companies, it certainly would be right to tax franchises of this company, which is the

same quasi public character, otherwise, there would be unjust discrimination. Counsel says that it is impossible to fix a just valuation upon this kind of property without some statutory regulation thereon. I do not think so; I know of no law on our statute books that provides how any particular class of property shall be valued outside of its estimated cash value in the markets, based upon ordinary information by those who assume to know something of its value.

In a contest between the taxpayer and the public, if the value of property is not susceptible of proof by ligitimate evidence, then of course it has no value, and it is not subject to taxation, but this is a judicial question to be tested by the ordinary rules of justice. Counsel says there is no remedy by which this tax can be collected in case a default is made in the payment thereof. If this is so, it is the misfortune of the state in having to lose the tax, but this does not exempt the company from listing and valuing all of its taxable property, the same as other individuals and corporations.

We, therefore, conclude that franchises of the above character are property, and subject to taxation under the laws of this state.

The other proposition as to whether a just and fair valuation was arrived at by the commissioners, we presume we will have to review, as the law treats this action of a summary character, to be liberally construed, and a mere technical omission of some relevant matter in the petition would not justify us in sustaining the demurrer at this time.

Authorities cited in favor of taxation: State ex rel. Milwaukee Street Railway Co. v. Anderson, 90 Wis. 550; Sanford v. Poe, 17 Sup, Ct. 305; Weir v. Norman, 17 Sup. Ct. 527; Henderson Bdg. Co. v. Com'rs of Ky., 17 Sup. Ct. 523; Pacific Hotel Co. v. Lieb, 83 Ill. 602; Virginia Canon Toll Road v. The People, 22 Colo. 429; Denver v. Bayer,

7 Colo. 114; 25 Am. & Eng. Enc.of Law, 631; 8 Am. and Eng. Enc. of Law, 585-600; Morawetz on Corporations, § 540; People v. Henderson, 12 Colo. 369; Co Com'rs v. Colo. Seminary, 12 Colo. 497.

Authorities cited against taxation: Stanley v. Little Pittsburg M. Co.; 6 Colo. 415; Cooley on Taxation, 329; Hurd v. McClellan, 14 Colo. 213; Governor v. Tidewater Canal Co., 24 Howard 257; Stewart v. Jones, 40 M. 140; Susquehanna Canal Co. v. Benton, 9 Watts & S. 27 (Pa.); Yellow River Imp. Co. v. Wood Co., 17 L. R. A. (Wis.) 92; 8 Am. and Eng. Enc. of Laws, 634; Thompson on Corporations, § 5355; Toll Road v. People, 22 Colo. 429, 2 Morawetz on Corporations §§ 924, 930, 934; 1 Beach on Private Corporations, § 362; 2 Id. § 389; 4 Thompson on Corporations, §§ 5355, 5373, 5374; People v. Barker, 141 N. Y. 251; Id. 152 N. Y. 419; Id. 139 N. Y. 55; People v. Dyke, 45 N. Y. Sup. 621; People v. Com'rs of Taxes, 131 N. Y. 55; Fond du Lac Water Co. v. City, 82 Wis. 329.

Therefore the demurrer will be overruled by the court.