PEOPLE ex rel. BROKAW BROS. v. FEITNER et al.

(Supreme Court, Appellate Division, First Department. November 10, 1899.)

1. MUNICIPAL CORPORATIONS—TAXES—REDUCTION OF ASSESSMENTS.

Where a corporation, for the purpose of getting an assessment reduced, submits tó the commissioners of taxes and assessments a verified statement, showing all the assets and liabilities of the corporation, and that its property and capital has become impaired, in the absence of other evidence discrediting such statement, a statement made by the treasurer of the corporation, testifying before the commissioners, that the property and the capital of the corporation were unimpaired, and its stocks were at par, being a mere conclusion, does not justify the commissioners in discrediting the verified statement.

2. MUNICIPAL CORPORATIONS—PROPERTY LIABLE TO TAXATION—GOOD WILL OF BUSINESS.

Commissioners of taxes and assessments of New York City have no right to consider the good will of a business as property subject to taxation.

Appeal from special term, New York county.

Petition by Brokaw Bros. for a writ of certiorari against Thomas L. Feitner and others, commissioners of taxes and assessments of the city of New York. From an order dismissing the writ, the relator appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Henry E. Howland, for appellant.
James M. Ward, for respondents.

INGRAHAM, J. The respondents, the commissioners of taxes and assessments of the city of New York, assessed the property of the relator for the year 1898 at the sum of $500,000. Thereafter, and while the tax books were open, the relator submitted to the respondents a statement in writing, duly verified, purporting to show the property of the relator subject to taxation, and the respondents examined the treasurer of the relator as to the property of the company. Subsequently the respondents reduced the assessed value of the relator's property subject to taxation to the sum of $199,300, and confirmed the same at that figure. The relator, being dissatisfied with this action of the respondents, commenced this proceeding to obtain a review of their action. The statement submitted to the respondents showed that the total gross assets of the corporation, all of which appears to have been personal property, was $1,204,139.76; that bonds of the corporation outstanding amounted to $500,000, bills payable to $351,805, making an aggregate indebtedness of $851,805.65; and that the amount invested in United States securities was $300,000, par value. The treasurer of the corporation testified before the tax commissioners that the corporation paid a dividend for the year 1897 of 5 per cent.; that the indebtedness was an actual existing indebtedness of the corporation for merchandise purchased; that the gross assets included all bills receivable at their face value and all other property of the corporation. It would thus appear that the re-

lator had made a full statement of its condition to the respondents. Its officers were examined by the respondents, and an exact statement of the condition of the corporation was furnished. There was no evidence produced before the respondents that tended in any way to contradict or impeach the accuracy of this statement produced by the relator or the truth of the testimony of its officers. As was said by the court of appeals in People ex rel. Edison General Electric Co. v. Barker, 141 N. Y. 255, 36 N. E. 197:

"These suggestions serve to show that the duty of the tax commissioners is not to subordinate facts, fairly disclosed and uncontradicted, to the influence of presumptions amounting to little more than a guess or possibility, but to deal with them fairly and intelligently. These officers are armed with power to ascertain the truth of answers given to their formal inquiries, and should always do so when the means of investigation are put before them. Here the facts for which they asked, and all that they asked, were furnished under the oath of the relator's treasurer. If they were dissatisfied with his valuation of assets in gross, they could have required them to be given in detail, and so been enabled to judge of the fairness or unfairness of the valuation; but they were not justified in assuming that the treasurer, for the purpose of evading taxation, had falsely underestimated the assets, because of a recent dividend, the declaration of which did not necessarily involve the fact of an unimpaired capital."

The same principle was stated and applied in People ex rel. Edison Electric Illuminating Co. v. Barker, 139 N. Y. 61, 34 N. E. 724, where it is stated:

"Under the statute, the relator made application to correct the assessment actually made in regard to its present estate. It therefore became the duty of the commissioners to examine the applicant on oath. This was done by examining the treasurer, and such examination was made by obtaining written answers to printed questions submitted to the applicant. * * * If they were as much in detail as was requested, and if no fault were there found with the answers on any ground of insufficiency of information upon a subject embraced in an inquiry, it seems to me that justice and fair dealing require the acceptance of the information given as containing the truth, unless there be some reason, founded upon other facts established by competent evidence, to cause the commissioners to disbelieve the information given by the applicant or in its behalf and under oath."

And it was further held in that case that:

"The subject of assessment was the capital of the corporation. The assessment must by law be at the actual value of the subject assessed, and, when that is known and ascertained, no other value can be substituted for it. If facts sufficient were disclosed in this statement from which this value could be accurately discovered, these facts must be conclusive on the question, assuming them to have been sufficiently proved by uncontradicted evidence, as already set forth, and that there was no reason which appeared in evidence for disbelieving them. Under such circumstances, and for this purpose of an assessment, the market price of the shares of the stock into which the capital is divided is not material, nor the amount of the dividends which may have been paid by the company."

It is quite apparent that the total property of this corporation which was subject to taxation was $52,334.11. Taking the gross assets at $1,204,139.76, and deducting from that the total indebtedness of $851,805.65, leaves a balance of assets over liabilities of $352,334.11. From that are to be deducted the United States bonds owned by the corporation, amounting to $300,000, leaving the net value of the property subject to taxation of $52,334.11. The re-

spondents, however, in their return to the writ, stated that they had based their estimate of the relator's property upon a statement made by the treasurer of the company, upon his examination, that the capital was worth par, and was not impaired. From that testimony, which is annexed to the return, it appears that after the witness had been examined he was asked the following questions: "To sum up the whole condition of this corporation, do you or do you not consider the value of its capital worth par?" Answer: "We do consider it worth par." Question: "And the capital is not impaired?" Answer: "No; except to the extent of about $728." Based upon this observation, the respondents assumed that the surplus property of the company above its debts was equal to its capital stock, and deducting the amount invested in United States bonds and the deficiency stated from the total amount of the capital stock fixes the value of the property of the corporation subject to taxation at the sum of $199,300. The respondents cite, as an authority for their action, the case of People v. Barker, 144 N. Y. 95, 39 N. E. 13. We do not think, however, after an examination of that case, that it justified the respondents in their action. In the opinion in that case then decisions of the court of appeals in the cases before cited were referred to and reaffirmed, but it was held that the special facts in that case before the commissioners justified them in rejecting the statement of the officers of the company, and assuming that the capital stock of the corporation was not impaired. In this case nothing appears which justified the commissioners in refusing to accept the detailed statement made by the officers of the company, verified by uncontradicted and unimpeached evidence as to the total amount of the property of the company. The witness was asked whether he considered the stock worth par, and he answered that he did, and that the capital was unimpaired; but this was a mere conclusion as to what the witness understood about the condition of the company, and certainly does not tend to contradict the testimony as to the actual assets and liabilities of the company. There was before these commissioners no evidence to justify any tribunal charged with the determination of the fact in finding that this corporation had any property in addition to that contained in the statement furnished, and this conclusion of the witness that the capital was unimpaired certainly is not sufficient to impeach the uncontradicted testimony of the witness as to the actual amount of the company's property and its liabilities. In the Edison Cases, supra, it was expressly held that the fact that the company paid large dividends was not material upon the question as to the actual amount of the property of the company, where a detailed statement of its assets and liabilities has been submitted. In this case it might well be that, although upon the books of the company there was an impairment of the capital, still, because of the earning power of the company, including the good will of the business that it conducted, its officers could consider that its capital was unimpaired. Yet it is clear that the commissioners of taxes have no right to consider the good will of a business as prop-

erty subject to taxation. We think, therefore, that the commissioners proceeded upon a false basis when they, disregarding the uncontradicted testimony as to the property of this corporation, assumed that its capital was unimpaired, and proceeded to impose an assessment based upon that presumption.

It follows that the order appealed from must be reversed, and the assessment reduced to $52,334.11. All concur.