testator's death there were strictly speaking no trustees of the Plain Edge Methodist Episcopal Church and consequently no person named or definitely described who should execute such trust, it would not therefore fail, but would vest in the Supreme Court. Laws 1893, c. 701, § 1. Before the termination of the estate for the life of Margaret E. Bumstead the said church may become incorporated, when it will of necessity have a board of trustees, and the right to perform such trust duties may then belong to them. At least, they should be given an opportunity to assert their claim, and, as no immediate prejudice to any one will result from postponing the consideration of such questions, we cannot say that the surrogate abused the discretion conferred upon him in declining to construe this clause of the will at the present time.

So much of the order or decree of the Surrogate's Court of Nassau county as is appealed from should be affirmed with costs. All concur.

---

PEOPLE ex rel. BUFFALO GAS CO. v. STATE BOARD OF TAX COM'RS.

(Supreme Court, Appellate Division, Fourth Department. March 9, 1910.)

TAXATION (§ 496*)—FRANCHISES—ASSESSMENT—CERTIORARI—RETURN.

Tax Law (Laws 1896, c. 908) § 252, provides that the officers making a return to certiorari shall concisely state such facts as may be pertinent and material to show the value of the property assessed and the grounds for the valuation made by the assessing officers, in addition to certified or sworn copies of the roll, or such portions thereof as may be called for. A return to a writ of certiorari by the tax commissioners recited that the assessment of relator's franchise included the value of the tangible and intangible property in the streets, and that it was arrived at "upon consideration of all the facts and circumstances affecting the value of said property." An amended return alleged that, in arriving at the value of the tangible property to be considered in valuing the special franchise, the board did not limit itself to any fixed rule, but applied the test of the so-called net earnings rule and the so-called stock and bond theory so far as capable of being applied, and in the light of these tests, and all other circumstances and conditions, exercised its best judgment as to the value of the intangible property. *Held*, that such returns contained mere conclusions of fact, and were fatally defective for failure to set out facts necessary to enable the court to determine whether the assessment was properly made.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 904; Dec. Dig. § 496.*]

Spring and Kruse, JJ., dissenting.

Appeal from Special Term, Erie County.

Certiorari by the People, on the relation of the Buffalo Gas Company, against the State Board of Tax Commissioners. From an order on a decision adverse to relator, and which denied relator's application for a second further return to the writ, it appeals. Reversed.

The proceeding was commenced on the 2d day of March, 1909, by the granting of a writ of certiorari directed to the members of the State Board of Tax Commissioners and to said board, commanding them, in substance, to make return of their proceedings in the premises, to the end that the assessment made against the property of the relator might be reviewed. On

the 11th day of June, 1909, the Attorney General, for and on behalf of the board, served a return to such writ. On June 14, 1909, an order was duly made upon the stipulation of the parties changing the place of trial from Albany county to Erie county. Thereafter, and on November 10, 1909, an amended return was served. The relator thereupon made a motion for a further amended return, which motion was denied, and from the order denying such motion this appeal is taken.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Louis L. Babcock, for appellant.

Edward R. O'Malley, Atty. Gen. (Percy S. Lansdowne, of counsel), for State Board of Tax Com'rs, respondent.

George E. Pierce, for respondent City of Buffalo.

McLENNAN, P. J. The relator claims to be aggrieved because the State Board of Tax Commissioners fixed the value of its special franchise in the city of Buffalo at $2,000,000. It is claimed that such valuation is illegal, largely excessive, and unequal as compared with the valuation placed upon other real estate in the city of Buffalo. It is unnecessary to specify in detail the many grounds set forth in the petition which it is claimed make the assessment and valuation in question invalid, because upon this appeal this court has not the power to determine or pass upon the validity of the claims so set forth.

The only question here presented is: Was the return or returns made by the State Board of Tax Commissioners to the writ of certiorari granted herein a compliance with the provisions of section 252 of the tax law (Laws 1896, c. 908), as interpreted by the courts of this state, and a compliance with the requirements of the writ?

The purpose of a return to a writ of certiorari in such case is to put the court which by law is required to review the same and determine its legality and fairness in possession of all the material facts which induced the Board of Tax Commissioners to make the assessment complained of. If some relevant and material circumstance was considered by the board or evidence was presented to it and which induced its action in the premises, it is unnecessary to say that a court charged with the duty of reviewing such action cannot intelligently pass upon its propriety or validity, unless such court is informed as to the circumstances or evidence which induced the same. An intent of the Legislature could hardly be more clearly expressed than by the language of section 252 of the tax law, which is as follows:

"Return to Writ. The officers making a return to such writ shall not be required to return the original assessment roll or other original papers acted upon by them, but it shall be sufficient to return certified or sworn copies of such roll or papers, or of such portions thereof as may be called for by such writ. The return must concisely set forth such other facts as may be pertinent and material to show the value of the property assessed on the roll and the grounds for the valuation made by the assessing officers. * · * * "

The last paragraph of the section is especially significant as applied to the question here involved:

"The return must concisely set forth such other facts as may be pertinent and material to show the value of the property assessed on the roll and the grounds for the valuation made by the assessing officers."

The first return which was made to the writ, so far as the question here presented is concerned, contained only the following:

"That such assessment as made of such special franchises included the value of the tangible and intangible property in said streets and has been arrived at upon consideration of all the facts and circumstances affecting the value of said property, including the use or right to use said streets and public places, which your respondents have been able to ascertain."

The statement contained in such return is nothing more than conclusions of fact. It says:

"Such assessment * * * included the value of the tangible and intangible property in said streets. * * *"

Not a particle of evidence is returned, or even a suggestion made, from which it may be determined whether or not such statement is true. Whether the tangible property belonging to the relator was assessed at $1,950,000 and the intangible property at $50,000, or vice versa, cannot be learned from such return. Again, it is said that the value so placed upon the franchises of the relator "has been arrived at upon consideration of all the facts and circumstances affecting the value of said property. * * *" Nothing is suggested in the return as to the facts and circumstances upon which the board based its conclusion in the premises. Indeed, there is nothing set forth in the return which in any manner tends to establish the correctness of the conclusion upon the facts certified by the board, and, as it seems to me, there is nothing contained in such return, outside of the roll, documents, etc. (which do not appear in the record before us), to enable the judge who was charged with the duty of reviewing this assessment to determine whether such assessment was properly made or not. The amended return is no more explicit. In it it is said:

"That in arriving at the value of the tangible property to be considered in making the said valuation of the special franchise said board did not limit itself to any one fixed rule or method of determining said value, but in arriving at such value applied the tests of the so-called net earnings rule, and of the so-called stock and bond theory so far as capable of being applied to the facts and circumstances presented by this case, and in the light of these tests, and of all other circumstances and conditions affecting the value of said intangible property which were before it as aforesaid, exercised its best judgment as to the value of said intangible property."

There is not a single fact or circumstance set forth in such statement which would enable the reviewing judge to determine whether or not the assessors had legally discharged their duty in the premises. Every allegation is a statement of a conclusion of fact, and there is no evidence returned or even suggested which tends to substantiate such conclusion. Suppose as is said in the amended return, "The board did not limit itself to any one fixed rule or method of determining said value, but in arriving at such value applied the tests of the so-called net earnings rule, and of the so-called stock and bond theory so far as capable of being applied to the facts and circumstances presented by this case"—what did such board ascertain in respect to net earnings which led them to consider that test at all? Or did they learn of facts applicable to such test which, perchance, were controlling with them, irrespective of the stock and bond theory, so-called, or vice

versa? In other words, from that statement how was the court to know what influence one theory or the other had or might have had in inducing the board to fix the valuation of the relator's property as it did? Then the return states: "And in the light of these tests. * * *" What test? Certainly it does not mean anything to say a test under a certain rule, or a test under a certain theory, can be made the basis of an assessment, unless it appears how such rule or theory was deemed to be applicable by the persons charged with the duty of making such assessment. Then, in the amended return, the commissioners go on to say:

"And in the light of these tests, and of all other circumstances and conditions affecting the value of said intangible property which were before it as aforesaid, exercised its best judgment as to the value of said intangible property."

What circumstances and conditions were before them which induced their action in the premises are not disclosed by such return.

The amended return, as does the original return, simply contains a statement of conclusions of fact, and neither return puts the court in possession of any facts which could possibly lead it to pass intelligently upon such allegations. Indeed, as held in the case of People ex rel. Joline v. Willcox, 134 App. Div. 563, 119 N. Y. Supp. 641, the court, upon proper motion, would have been entirely justified in striking out all the allegations of the return and amended return to the writ in question upon the ground that they were only statements of conclusions of fact, and therefore in no manner complied with the provisions of the section of the tax law which prescribes what the return to a writ of certiorari shall contain.

We think it has been judicially determined that a return made to a writ of certiorari such as is contained in this record does not comply with the requirements of the statute to which attention has been called. People ex rel. Jamaica Water Supply Company v. State Board of Tax Commissioners, 196 N. Y. 39, 89 N. E. 581. See, also, same case on motion for reargument, 197 N. Y. 33, 90 N. E. 112. In the opinion written denying the motion for reargument the court said:

"We do not deem it necessary, however, to add anything to what was said in the principal opinion on this subject to the effect that it was the manifest design of the Legislature 'that they should disclose the modus operandi leading to the result which they reached.'"

In the case at bar the State Board of Tax Commissioners in their return not only neglected to state the modus operandi, but they practically gave no intimation either by the evidence returned by them or by suggestion or otherwise as to how they reached the conclusion which they did. To the same effect is the decision in People ex rel. Edison E. I. Co. v. Barker, 139 N. Y. 62, 34 N. E. 722.

We are inclined to think that it is true that, if the State Board of Tax Commissioners returned that they had assessed a certain building, the tangible property of a corporation such as the relator, at so much, upon the evidence of experts as to its value, the statement of such facts in the return would be sufficient, unless required by the writ to make disclosure of the evidence given by such experts. But that question is not presented by this appeal because the bald statement in

the return is in effect: We assessed the tangible property and the intangible property owned by the relator at a certain figure upon circumstances and information which came to us and upon which we relied, and which we withhold from the court charged with the duty of determining whether or not we have properly discharged our duty in the premises as to this relator.

We think that the motion for a second and further return was improperly denied, and therefore that the order appealed from should be reversed, with $10 costs and disbursements, and an order entered directing the respondents to concisely set forth such facts as may be pertinent and material to show the valuation made by it, to the end that the court may determine whether the conclusion of the respondent was fairly drawn from the facts before it.

Order reversed, with $10 costs and disbursements, and motion granted. All concur, except SPRING and KRUSE, JJ., who dissent in a memorandum by SPRING, J.

SPRING, J. I dissent from the conclusion reached by the majority of the court. It is to be remembered that upon this appeal we are dealing with a pleading, not with a determination after a hearing and decision upon the facts.

It is the office of a pleading to set out in a general way a plain concise statement of the facts. Their development must be deferred to the trial. In the amended further return the respondent states that it "made no separate valuation of the tangible and intangible property." Whether the practice was correct or otherwise, it is a statement of a fact, and is amplified and explained by the allegation setting forth what was included in this gross valuation. It then alleges that no fixed rule was adopted in arriving at the valuation of the intangible property.

There are two well-known tests available in the ascertainment of the value of this class of property—one the net earnings rule, the other the stock and bond theory—and both were applied so far as the facts and circumstances permitted, and the board exercised the best judgment upon these tests "and of all other circumstances and conditions affecting the value of said intangible property." These are general statements proper in a pleading. The valuation arrived at may be the result of many details not susceptible of precise statement in the return. It probably will be impossible for the respondent to set forth in the return just to what extent each rule referred to influenced its decision. There are three members of the board. One may have given more importance to the net earnings rule, another to the stock and bond theory, and the remaining one to other circumstances and facts presented to the consideration of the board. The members of the board considered the value of the property with the various methods in mind, and all eventually agreed upon the valuation arrived at. The members of the board must have a large discretion. They are charged with the important duty of ascertaining and assessing the value of these franchises. The character of the property makes the duty a difficult one. The Legislature comprehended the situation, and therefore permitted a hearing to be had, evidently expecting that all the details influencing the decision of the board could not be embodied in the

return. If injustice is done in any case, it can be remedied when the facts are developed. People ex rel. N. Y. O. Co. & W. R. Co. v. Tax Com'rs, 132 App. Div. 604, 610, 117 N. Y. Supp. 81 (prevailing opinion of Presiding Justice Smith).

The wide range vested in the taxing board, and the complexity of the problem, are elaborated upon in the opinion of Judge Earl, as referee, in the case of the Metropolitan Street Railway Company v. State Board of Tax Commissioners, and whose report was sustained by the Court of Appeals. 174 N. Y. 417, 67 N. E. 69, 63 L. R. A. 884, 105 Am. St. Rep. 674. He states that the members of the board are not required "to adopt any certain or fixed rule or method. The only rule for their guidance is the actual value of the property to be assessed, and they may avail themselves of all facts and all information which in their judgment has any bearing upon such value. * * * If the local assessors throughout the state are bound to adopt some certain rule or method in reaching assessable values, and if their assessments must fail unless, when questioned, they can state some certain rule or method by which they were guided, I believe a large share of their assessments would fail to withstand the assaults of the taxpayers. * * * Here the same rule was adopted by these officers in all cases, to wit, to use all the tests of values and all the facts and information bearing upon values, and then to fix the fair values of the franchises, including no other property, using their best judgment, and no decision condemns such an assessment. * * * They may act upon hearsay, they may take the judgment of others, they may consult experts and resort to all the tests and information which they think will aid them in reaching the value with sufficient accuracy for the purpose of taxation, and they certainly can resort to all the means and evidence for the guidance of their judgment which private persons might use to reach the values of similar property in which they propose to invest their money. They may consider the cost of reproduction, the location of the franchise, and all its advantages, and all the probabilities and possibilities relating to it, present and future."

Judge Vann in his opinion, referring to special franchises and the difficulty of their valuation, said:

"They could not be seen, handled, measured, weighed, or counted. They were specialties and had no market value. There were no sales to guide and no experience from ownership, rental, or use to rely upon. The new property is real estate in name, but not in reality, for it is a mere privilege to do something in public streets and places not permitted to citizens generally. While local in a narrow sense, it is unconfined in its real nature, for it depends largely on the earning capacity of a going concern, frequently with several special franchises, but with no means of determining the amount earned by each."

With the multitude of circumstances which must enter into the ascertainment of the valuation, it is unreasonable to require their specific statement in a return. Mathematical exactness is never expected of an assessor. When several rules and methods, and other elements which cannot be crystallized into a regulation or method in any given assessment, are all permissible in order that the taxing board may make a fair valuation, they cannot separate and specify these various factors

of their valuation, much less estimate the importance given to each factor.

They have stated the "modus operandi leading to the result which. they reached" (People ex rel. Jamaica Water Supply Co. v. State Board of Tax Commissioners, 197 N. Y. 33, 90 N. E. 112), not in detail, but in a general way, setting forth the manner in which they decided upon the valuation. In each of the cases cited in the prevailing opinion the appeal was from a determination after the facts had been proven where a different rule obtains.

I think no benefit will result from a further amendment of the return, and therefore vote for an affirmance of the order.

KRUSE, J., concurs.