The People ex rel. The Equitable Gas Light Company, Respondent, *v.* Edward P. Barker et al., as Commissioners, etc., Appellants.

Under the provisions of the law governing the taxation of corporations (Chap. 456, Laws of 1857), which requires, in order to ascertain the capital subject to taxation, that all the property owned by a corporation, both real and personal, shall be valued, and that from the aggregate the assessed value of the real estate be deducted, in determining the value of the real estate the assessors are not bound by the assessed valuation. This does not necessarily show the full value, and the assessors may legally disregard it, and estimate the real estate at its actual value, although this exceeds the assessed valuation.

In proceedings by certiorari under the act of 1880 (Chap. 269, Laws of 1880) to review the proceedings of the commissioners of taxes and assessments of the city of New York in assessing the capital of the relator for the year 1893, it appeared by the computation of the commissioners that they regarded the relator's capital as unimpaired; from this they deducted the assessed value of its real estate, and the value of its patents and franchises, and the balance was the sum fixed as the portion of the relator's capital liable to taxation. It was objected by the relator that no deduction was made for its debts. *Held*, untenable; that the determination that the capital was unimpaired

1894.] People ex rel. E. G. L. Co. v. Barker et al. 95

N. Y. Rep.] Statement of case.

implied that there were assets over and above the capital sufficient to pay any outstanding debts ; and so, if the commissioners' determination was justified, they were not bound to deduct the debts.

The commissioners in their return referred to the statement presented to them by the relator, upon application by it, under the New York Consolidation Act (§ 820, chap. 410, Laws of 1882), for a reduction and cancellation of the assessment, and declared that they had "carefully considered the same and accepted as true all the statements therein contained." The statement contained nothing in terms as to the actual value of the relator's real estate, but simply stated its assessed value. *Held,* that the commissioners were not precluded by the statement from estimating the real estate at its actual value; but that the matter was finally remitted to their judgment and decision upon all the facts and proceedings, including the evidence of the applicant, and any other facts known to them or brought to their attention bearing upon the question.

Although, by the statement of the relator, it appeared that it was insolvent, it also appeared that it was paying large dividends out of earnings. No explanation of this was suggested. The commissioners in their return stated the amount of paid-up capital, the earnings and dividends, and referred to the fact that the relator omitted to state the actual value of its stock as it was required by the blank furnished it, and did not assert that the value of its capital stock was less than par. The return also referred to statements before them, filed by the relator in 1891 and 1892, and to the evidence of the relator's officers in proceedings brought to review the assessment of 1891, which was ratified by the courts (66 Hun, 61; 137 N. Y. 544); it appeared in those proceedings that the value of the assets of the relator in that year as returned by the relator exceeded the amount of capital, after deducting all its debts and liabilities, and the relator then claimed that over $5,000,000 of its assets was invested in real estate. The return also averred that the shrinkage in value set forth in the relator's statement for 1893 was fictitious and accounted for by the fact that in 1891 the relator returned the actual value, while in 1893 it returned only the assessed value of the real estate, which was $1,515,401. *Held,* that the commissioners were justified in distrusting the relator's statement and in acting upon the evidence outside of it, and that their assessment was valid and proper.

(Argued November 26, 1894; decided December 4, 1894.)

Appeal from order of the General Term of the Supreme Court in the first judicial department, made October 12, 1894, which affirmed an order of Special Term which set aside an assessment of the relator's capital for taxation for the year 1893.

The nature of the action and the facts, so far as material, are stated in the opinion.

*D. J. Dean* for appellants.　The mode of assessment pointed out by the statute has been strictly followed by the commissioners, and no error in their proceedings is shown by the return. (*People ex rel.* v. *Coleman,* 126 N. Y. 433; *People ex rel.* v. *Comrs. of Taxes,* 137 . id. 544; *M. F. Ins. Co.* v. *Comrs. of Taxes,* 76 id. 64; *People ex rel.* v. *Barker,* 48 id. 77; *People ex rel.* v. *Davenport,* 91 id. 574; *People* v. *Asten,* 100 id. 597.) The deduction of the assessed value of the realty from the value of the assets of the company in excess of its debts, is the deduction which the statute requires to be made in fixing the assessment for capital. (*People ex rel.* v. *Asten,* 100 N. Y. 601.) It is the intention of the statute that all the property of the corporation shall be assessed to its aggregate actual value, and that so much thereof as would otherwise escape taxation, by reason of under valuation of realty, shall be assessed as capital. (*People ex rel.* v. *Tax Comrs.,* 95 N. Y. 556; *People ex rel.* v. *Comrs. of Taxes,* 104 id. 249.)

*Frederic R. Coudert* for respondent. This is not a case where the commissioners should consider the market value of the stock. (*People ex rel.* v. *Coleman,* 126 N. Y. 448; *K. F. Ins. Co.* v. *Coleman,* 107 id. 541; *People ex rel.* v. *Barker,* 139 id. 61.) As it must be assumed, in the absence of evidence to the contrary, that the commissioners obeyed the law, the assessed valuation must be presumed to be the true value. (*P. R. R. Co.* v. *Comrs.,* 104 N. Y. 245; *Bd. Supers.* v. *Fowler,* 55 id. 253; Laws of 1882, chap. 410, § 814; *People* v. *Comrs., etc.,* 115 N. Y. 182.) Counsel for the appellant insisted that the presence of surplus earnings for the year 1893 indicates the presence of surplus profits or reserve funds over and above the relator's capital provided for in chapter 456, Laws of 1857, section 3. The inquiry put by the commissioners was plain and unequivocal. It was not as to surplus profits or reserve funds, but as to the amount of surplus earn--

ings for the year ending the second Monday of January, 1893. This contention was properly ignored by the court below. (*E. G. E. Co.* v. *Barker*, 141 N. Y. 251; 139 id. 63.) The refusal of the commissioners to deduct the debts was an absolute unqualified violation of the law, which of itself alone is sufficient to vacate the assessment. (*People ex rel.* v. *S. A. R. R. Co.*, 141 N. Y. 196; *E. G. E. Co.* v. *Barker*, 139 id. 63.)

ANDREWS, Ch. J.  This is an appeal from the order of the General Term, affirming the order of the Special Term, by which the assessment for the relator's capital for taxation for the year 1893 was vacated and set aside. The relator is a corporation organized under the law for the incorporation of gas light companies, with a capital of $4,000,000, fully paid in or secured to be paid, and whose place of business is the city and county of New York. In the annual record of the assessed valuation of real and personal estate in said city and county for the year 1893, was entered the sum of $5,000,000 as the value of the relator's capital liable to assessment. Thereafter, pursuant to the provisions of sec. 820 of the Consolidation Act of 1882, the corporation made application to the commissioners of taxes for a reduction and cancellation of the assessment, and presented to the board a verified statement, and its vice-president was orally examined by the commissioners in support of the application. The commissioners subsequently decided the application and reduced the assessment to the sum of $1,972,700. The relator being dissatisfied with the decision and claiming that upon the proof it had no assets subject to taxation in the year 1893, procured a certiorari under chap. 269 of the Laws of 1880, to review the proceedings of the commissioners, to which a return was made by them, and upon the hearing the order was made setting aside the assessment. The sole question relates to the jurisdiction of the commissioners of taxes to make the assessment of the relator's property as finally entered in the roll.

Section 4 of the act of 1880, under which the relator proceeded, provides that "if it shall appear by the return to such

writ that the assessment complained of is illegal, erroneous or unequal for any of the reasons alleged in the petition, the court shall have power to order such assessment, if illegal, to be stricken from the roll." The complaint is that the assessment was illegal for the reason that the relator had no capital subject to taxation in the year 1893. It was represented in the statement presented to the commissioners by the relator that its real estate, " as per sworn valuation of the deputy tax commissioner," was of the value of $1,515,400, and that its total personal property was of the value of $1,041,483.43, making the aggregate value of its whole property, real and personal, the sum of $2,556,883.43. In the items of its personal property is included patent rights and franchises valued at $500,000, and no claim is made that it was entitled to any exemption of any other part of its personal estate from taxation. The statement further represents that the debts of the relator were $2,839,192.98. It thus was made to appear that the debts exceeded the total assets in the sum of $282,309.55, or, in other words, that the relator was an insolvent corporation, and that its capital of $4,000,000, which had been wholly paid in or secured to be paid, had been wholly lost. But notwithstanding this condition of the relator's affairs, the statement contained the further representation that during the year 1892 the surplus earnings of the corporation over and above operating expenses, leakage, bad debts and depreciation of plant had been $331,777.25, out of which a dividend of eight per cent on the stock, amounting in the aggregate to $320,000, had been declared and paid by the company. The presentation of a statement showing that an insolvent corporation was doing, nevertheless, a highly successful business, and that out of its net earnings was able to pay a large dividend to its stockholders, naturally challenged inquiry. It was not asserted by the relator that it had sustained recent or large losses, and it gave no explanation of the apparent anomaly disclosed in a comparison of the several facts alleged in the statement. It also appears that the dividend declared in 1892 was not exceptional. A dividend at the same rate out of

1894.] People ex rel. E. G. L. Co. v. Barker et al. **99**

N. Y. Rep.]    Opinion of the Court, per Andrews, Ch. J.

earnings was declared and paid in 1891. The computation upon which the commissioners reached the result stated in the corrected assessment roll appears in the return made to the writ. They regarded the capital of $4,000,000 as unimpaired. From this sum they deducted $1,527,300, the assessed value of the real estate, and the further sum of $500,000, the value of the patents and franchises, which left $1,972,700, the sum which they fixed upon as the portion of the relator's capital liable to taxation. It will be observed that the assessors made no deduction of the debts from the amount of the capital stock. Debts are deductible in ascertaining the assessable value of the capital of a corporation. (*People ex rel., etc.,* v. *Barker et al.,* 139 N. Y. 55.) But an unimpaired capital implies that there are assets over and above the capital sufficient to pay any outstanding debts, and, if the commissioners had a right to find as they did, that the capital of the relator was unimpaired, they were not bound to deduct the debts, since, presumably, they were offset by assets above the capital which otherwise would have been liable to taxation. The commissioners, in their return, referring to the statement presented by the relators, declared that they had " carefully considered the same and accepted as true all the statements of fact therein contained."

The statement contained nothing in terms upon the subject of the actual value of the relator's real estate. It stated the assessed value only. The theory of the statute is that real estate for the purpose of taxation shall be assessed at its full value. The rule formulated in the Revised Statutes is that " all real and personal estate shall be estimated by the assessors at its just and full value, as they would appraise the same in payment of a just debt due from a solvent debtor " (1 Rev. St. § 17; Laws 1851, ch. 176), and under the Consolidation Act (§ 814) it is to be assessed " at the sum for which such property under ordinary circumstances would sell." But it is well known that this duty cast upon assessors is seldom performed, and that the taxation of real estate throughout the state is generally upon an assessment which represents but

part of its actual value. Assessment at the full value is the exception and not the rule. If the ratio between the actual value and the value as assessed is uniform, no inequality of taxation would result, except, perhaps, in the distribution of the tax as between real and personal property, assuming that the assessors do not apply the same ratio in assessing personalty. Real and personal property are to be separately assessed. In case of an individual assessed for both, if the realty be undervalued, the loss cannot be made up by adding it to the assessment of the personalty. But the law governing the taxation of corporations (Laws of 1857, ch. 456) requires the valuation of the whole property owned by the corporation, whether real or personal, or both, in order to ascertain the capital which is the subject of taxation (*People ex rel. Union Trust Co.* v. *Coleman*, 126 N. Y. 433), and from the aggregate is to be deducted the assessed value of the real estate, and the balance is the capital subject to assessment, after deducting debts and any exemptions allowed by law. In assessing the capital of a corporation for the purpose of taxation, it is immaterial in which description of property the capital may be invested. Both its real and personal property are to be considered and valued, and from the aggregate value is to be deducted the assessed value of the real estate, for the obvious reason that to that extent a separate taxation is provided. (*People ex rel. Eq. Gas Light Co.* v. *Barker et al.*, 66 Hun, 21; affd. in this court in 137 N. Y. 544.) In case of corporations it may happen that an undervaluation in the assessment of the real estate as such will be corrected in its valuation as part of the capital, and so the undervaluation may be remedied, and the whole property be subjected to taxation at its real value. The fact, therefore, that the assessed value of the relator's real estate was $1,515,400.00, does not necessarily show that it was its full value, nor did it, we think, preclude the commissioners from estimating its value for the purpose of ascertaining the capital subject to taxation at its actual value, although it exceeded the assessed value. The act of the commissioners in undervaluing the real estate in its assessment as

1894.] People ex rel. E. G. L. Co. *v.* Barker et al. 101

N. Y. Rep.]    Opinion of the Court, per Andrews, Ch. J.

such did not estop the public nor relieve them of the duty, in ascertaining the value of the capital, to estimate the real estate at its full value. We are not here concerned with any question of inequality of assessment as between the relator and other taxpayers. We hold that the commissioners could legally disregard the assessed value of the real estate in estimating the value of the capital, and the question of legality is the only point now in question. It remains to consider whether the facts stated in the return or those in connection with the undenied allegations in the petition (*People ex rel. Peck* v. *Commissioners*, 106 N. Y. 64), justified the assessment in question. The commissioners were the body intrusted with the duty of making assessments for purposes of taxation. It is made the duty of the deputy tax commissioners in the first instance to fix the valuation of all taxable property in their respective districts and return the result to the commissioners. (Consolidation Act, § 814.) When the annual record is made up persons considering themselves aggrieved may apply to the commissioners for redress, and if the application relates to the amount of personal property it is the duty of the commissioners to examine the applicant on oath in respect to the complaint. But the commissioners are not concluded by the statements made by the applicant. The statute declares that upon such application, after having examined the applicant under oath, the commissioners, "if in his or their judgment the assessment is erroneous, shall cause the same to be corrected and fix the amount of such assessment as they may believe to be just" (sec. 820). The matter is finally remitted to their judgment and decision upon all the facts and proceedings, including the evidence of the applicant, and any other facts known to them and brought to their attention bearing upon the complaint. This principle has been frequently decided in similar cases. (*People ex rel., etc.,* v. *Barker*, 48 N. Y. 77; *People ex rel. Manhattan F. Ins. Co.* v. *Commissioners*, 76 id. 64; *People ex rel. Westchester F. Ins. Co.* v. *Davenport,* 91 id. 574; *People ex rel.* v. *Asten,* 100 id. 597.)

**102**  People ex rel. E. G. L. Co. *v.* Barker et al.  [Dec.,

Opinion of the Court, per Andrews, Ch. J.    [Vol. 144.

We held in the case of *People ex rel. Edison* v. *Commissioners of Taxes* (139 N. Y. 55) that the judgment of the commissioners was not a capricious and arbitrary one, and that when the proofs presented on the application are full, uncontradicted and credible, and show the assessment to have been erroneous, and it does not appear that the commissioners had or acted upon any other information, they cannot arbitrarily refuse to grant relief. The same rule was declared in a case between the same parties (141 N. Y. 251).

In the present case there were circumstances tending to create question. The extraordinary fact that the corporation, although by its statement insolvent, was paying large dividends out of earnings, has been adverted to, and no explanation is suggested. The statement also gave the assessed value of its real estate and left it to inference and presumption that this was its actual value. But the commissioners in compliance with the demand of the writ, set forth in their return the reasons upon which they acted. They referred among other things to the amount of paid-up capital, the earnings and dividends; the fact that the relator omitted to state the actual value of its stock, as required to do by the blank furnished by the commissioners, but substituted a different paper, and that it did not assert or claim that its capital stock was of less value than $4,000,000.

But the return states a still further ground for their decision. It avers in substance that the relator in 1891 and 1892 filed verified statements in respect of the taxes of these years, and that the commissioners had before them these statements, and the evidence of the relator's officers in proceedings brought to review the assessment of 1891, and the decisions of the Supreme Court and of this court ratifying the assessment of that year (66 Hun, 61; *S. C.*, 137 N. Y. 544), and they averred that it appeared in those proceedings that the assets of the relator, in 1891, were worth more than $4,000,000 over and above all its debts and liabilities, and that the relator in that year declared a dividend of eight per cent on its capital stock. The commissioners further returned that, in their judg-

ment, the shrinkage of value set forth in the statement of 1893 "was fictitious and not real, and was accounted for by the fact that in 1891 the relator returned its actual assets, while in 1893 it returned only the assessed value of its real estate." A reference to the decision in 66 Hun (*supra*) shows that in 1891 the relator returned the value of its gross assets at $6,740,666.52, and that, after deducting all its debts and exemptions, its assets exceeded its whole capital. The relator then claimed, as appears by the opinion, that five millions or more of its gross assets had been invested in real estate, lands, buildings, mains, etc., separately taxed, etc., and claimed to have the whole sum so invested deducted in estimating the value of its capital.

Enough has been stated to show, we think, that the commissioners were justified in distrusting the statement furnished by the relator as to the value of its assets in 1893. So far as it went the statement may have been true, but the omission to state the actual value of its real estate, and stating the assessed value only, afforded an opportunity to evade the real inquiry as to the value of the capital liable to taxation. It is true that the relator's capital may have been depleted by losses between 1891 and 1893, but this was not suggested and seems inconsistent with the continued business prosperity which justified so large dividends from large earnings. The commissioners had a right to act upon evidence outside of that furnished by the relator. In making inquiry and collecting the facts, they are not bound by the strict rules which govern ordinary judicial proceedings. If they act in good faith upon their best judgment, upon reasonable grounds, and they do not err in the principle of assessment to the prejudice of the taxpayer, their decision cannot be overruled.

We think the order of the Special and General Terms should be reversed and that the proceedings of the commissioners should be affirmed.

All concur.

Ordered accordingly.