PEOPLE ex rel. EDISON ELECTRIC ILLUMINATING CO. v. HARKNESS et al.

(Supreme Court, Special Term, Kings County. December 30, 1895.)

Certiorari by the Edison Electric Illuminating Company to review an assessment of its property made by William Harkness and others, constituting the board of assessors of the city of Brooklyn.

WILLARD BARTLETT, J. The most important question which arises in the present proceeding relates to the power of the state to tax patent rights. The case was argued so late in the term as to leave me very little time for its consideration before the organization of the appellate division would disqualify me from acting as a trial judge. I have devoted most of this time to a study of the briefs and an examination of every authority cited; and I regret that there is not enough left to permit me to do much more than state my conclusions, without elaborating the reasons by which they may be supported. In my opinion, a patent right of the United States cannot be made the subject of state taxation. Such was the view of Chief Justice Marshall (McCulloch v. Maryland, 4 Wheat. 432); such is the view of the supreme court of Tennesseee (State v. Butler, 3 Lea, 222), and the supreme court of Pennsylvania (Com. v. Westinghouse Electric Manuf'g Co., 151 Pa. St. 265, 24 Atl. 1107, 1111); and, so far as the researches of counsel indicate, no court of last resort in any state has ever decided otherwise. The question was referred to by the court of appeals of this state in 1893, and declared to be a most important one, but it was not determined. People v. Barker, 139 N. Y. 55, 34 N. E. 722. I am unable to perceive any distinction in principle between state taxation of a corporate franchise bestowed by congress and state taxation of a patent right. In the case of California v. Central Pac. R. Co., 127 U. S. 1, 8 Sup. Ct. 1073, the supreme court of the United States unanimously denied the right of the state of California to tax the franchise of the Central Pacific Railroad Company derived from the federal government, declaring that a state

could not tax franchises which were the grant of the United States, and saying that it seemed almost absurd to contend that a power given to a person or corporation by the United States might be subject to taxation by a state. While a patent right differs in some respects from the franchise there under consideration, it is characterized by the same elements which led the court to hold that the Pacific Railroad franchises derived from congress were exempt from state taxation. Chief Justice Taney speaks of the franchise which a patent grants as the right to exclude every one making, using, or vending the thing patented without the permission of the patentee, whose monopoly is derived from and exercised under the protection of the United States (Bloomer v. McQuewan, 14 How. 549); and the supreme court of Pennsylvania points out in the Westinghouse Case (above cited) that the privilege is one which is designed for the public benefit, and which would be exposed to serious danger if every state could tax it at will, either directly or by means of a tax upon capital stock. Congress is empowered by the constitution to promote the progress of science and the useful arts by securing to inventors for limited times the exclusive right to their discoveries. It is not only the welfare of the inventor, but the welfare of the country, that is to be promoted by the exercise of this power. The issue of a patent thereunder seems to me as clearly for national purposes, and to subserve national ends, as the congressional grant of a corporate franchise to build a railroad; and if it is subversive of the powers of the federal government for the state to tax the one, as was held in the Central Pac. R. Co.'s Case, it is equally subversive of the powers of the federal government for a state to tax the other. My conclusion is that the value of patent rights belonging to the relator should be deducted from the assessed valuation of its property.

I think it is quite clear that the relator is entitled to a deduction of $50,000, representing unissued capital stock, included by mistake in the statement of gross assets.

As to the objection that the assessors ought to have deducted the actual, instead of the assessed, value of the relator's real estate in estimating the taxable capital, the language of the court of appeals in the case of People v. Barker, 144 N. Y. 94, 39 N. E. 13, seems to sanction the course taken by the board. "In case of corporations," says Chief Justice Andrews, "it may happen that an undervaluation in the assessment of the real estate as such will be corrected in its valuation as part of the capital, and so the undervaluation may be remedied, and the whole property be subjected to taxation at its real value." It does not appear in the present proceeding that the relator has been treated differently from other corporations, so far as this deduction is concerned, and therefore there is no more question of inequality of assessment between the relator and other taxpayers here than there was in the case cited. No reduction is called for by reason of any of the other objections urged upon the argument.

Upon the ground that the assessment is erroneous on account of the refusal of the board of assessors to deduct the value of the patent rights and the sum representing unissued stock, it must be sent back for correction in these respects, and an order will be made to that effect.