(27 Misc. Rep. 384.)

### PEOPLE ex rel. SUTPHEN v. FEITNER et al.

(Supreme Court, Special Term, New York County.  May, 1899.)

1. TAXATION—ASSESSMENT—REVIEW BY CERTIORARI.

Where nothing more is disclosed on a review of an assessment by certiorari than a difference in opinion as to the value of the property between the owner and the taxing authorities, the assessment will not be disturbed.

2. SAME.

Greater New York Charter (Laws 1897, c. 378, § 898), requiring a deputy tax commissioner appointed by the board of taxes and assessment to receive applications for the revision of assessments. and to take testimony thereon, and report his recommendation to the board, does not impose on him the duty of taking testimony merely on presentation of such an application, and to give the taxpayer notice thereof. It is only his duty to take such testimony as the taxpayer, who has the burden of supporting his application with proper proof, may require to be taken.

3. SAME—EVIDENCE.

Under Laws 1896, c. 908, § 253, authorizing the court reviewing an assessment by certiorari to take evidence where testimony appears necessary to the proper disposition of the matter, it should not be done to supply a deficiency in the record, caused by the inexcusable failure of the relator to properly submit his case to those authorized to make correction in the first instance.

4. SAME—DUTY OF COURT.

As the petition under Greater New York Charter (Laws 1897, c. 378, § 906) to correct an assessment for inequality by certiorari must state "the instances in which such inequality exists, and the extent thereof," where the relator failed to set out the facts on which he relied in support of his claim on its presentation before the tax commissioners in accordance with their requirement, and furnished no proof of the inequality, the court is under no obligations to take the proofs, and the decision must rest on what the return discloses.

Certiorari by the people, on the relation of John S. Sutphen, against Thomas L. Feitner and others, as commissioners of taxes, etc., to review an assessment on real property owned by the relator in the city of New York. Writ dismissed.

C. J. G. Hall (Uriah W. Tompkins, of counsel), for relator.

John Whalen, Corp. Counsel (James M. Ward, of counsel), for respondents.

BEEKMAN, J. The relator has sued out this writ in order to obtain a correction of the assessment of certain real property owned by him which has been made by the respondents for the purposes of taxation for the year 1898. The property so affected consists of vacant lots fronting on the Riverside Drive, on Seventy-Second street, and on Seventy-Third street, so far contiguous that, but for the intervention of a single lot, about midway between the said streets, they would together embrace the entire frontage of the block on Riverside Drive. It has been assessed at an aggregate sum of $145,000. On the 28th day of April, 1898, the relator made an application to the respondents, using a printed form, which they furnished him for the purpose, for the correction of the assessment, in which, after referring to the lots by their appropriate numbers on the tax map, he stated as follows: "He finds that the same has been assessed on the assessment roll of 1898 at a valuation of $145,000, whereas the same should not have been, in his judgment, valued at more than $69,000, to be in proportion to the assessed value of adjacent property, and in accordance with the marketable value thereof." Immediately following this is a printed direction requiring the applicant to "state in detail the special facts upon which this application is based." In obvious compliance with this request, the relator stated that "the market value of the property has not increased since 1895, and the ability to sell the property has, in fact, decreased. The property was assessed for the year 1895 at $57,000, being increased to $69,000 for the year 1896. It is vacant property, irregular in shape, and produces no income; is rock at the curb line covering all." Resting upon this statement, the relator then asked that his assessment might be reduced to the amount stated, namely, $69,000. The return to the writ states, among other things, that the respondents directed the deputy tax commissioner, by whom the assessment had been made, to re-examine the property, and to report to them in writing whether or not the alleged grievance of the relator had any substance; that, subsequently, he accordingly reported that he had re-examined the property, and that "the increases made in these valuations were made to conform to the general increase made in this section, and are fully justified by the market value of the property." The respondents then state that "under these circumstances, and upon the evidence that we have before us, and the relator having submitted no evidence in support of his allegations, we determined that the assessment as originally fixed was just, and therefore confirmed it at that figure."

There are two grounds on which the relator contends that the assessment is erroneous: (1) By reason of overvaluation; (2) by reason of inequality, in that the assessment has been made at a higher proportionate valuation than the assessment of other real estate on the tax rolls of the city for the same year. With respect to the first ground, there can be no difficulty in coming to a conclusion. Overvaluation means in excess of the market value of the property, or, as expressed in section 889 of the Greater New York charter (Laws 1897, c. 378), "the sum for which said property, under ordinary circumstances, would sell." It was therefore incumbent upon the relator to present to the tax commissioners some proof, or at least to make some averment, with respect to the actual market value of his property, which would show that his complaint was well founded. It will be noticed, however, that nothing of the kind was done. His application, while generally claiming an overvaluation, omits in its specification of facts any reference to actual market value. All that he states on the subject is that the market value of the property has not increased since 1895, when it was assessed at $57,000, and that the assessment was increased to $69,000 for the year 1896. An examination of the petition on which the writ was granted shows it to be similarly lacking in averments with respect to actual value at the time the assessment was made. Even assuming that the written application to the tax commissioners might fairly import an averment that the actual market value of the property did not exceed $69.000, the statement is, in terms, a mere expression of the relator's own judgment or opinion upon the question unsupported by any proofs. But the facts which he was asked and assumed to give in support of his general complaint may be reasonably regarded as embracing all of the specific grounds for his complaint which he had in mind when he applied for a reduction, and on which he based his claim of overvaluation. His line of reasoning seems to have been that, because his property was assessed in 1895 at $57,000, and in 1896 at $69,000, there must be an overvaluation in the augmented assessment of 1898, because "the market value of the property has not increased since 1895." This assumes that the assessments made in 1895 and 1896 expressed the actual market value in those years. But while it is true that the law requires property to be assessed for purposes of taxation at its actual value, it is a matter of common knowledge that such has not been the practice, the assessment usually falling much below that standard. Indeed, judicial notice of the fact was taken in the case of People v. Barker, 144 N. Y. 94, 39 N. E. 13, where it was said that (page 99, 144 N. Y., and page 15, 39 N. E.): "It is well known that this duty cast upon assessors is seldom performed, and that the taxation of real estate throughout the state is generally upon an assessment which represents but part of its actual value. Assessment at the full value is the exception, and not the rule." It was there held that the tax commissioners, in valuing the corporate assets of the relator for personal taxation, were not bound by the value at which the real property had been separately as-

sessed by them for taxation as such, but might estimate it at a larger sum if they then deemed it to be of greater value. See page 101, 144 N. Y., and page 15, 39 N. E. See, also, People v. Barker, 31 App. Div. 315, 51 N. Y. Supp. 1102, and 53 N. Y. Supp. 1111, affirmed 158 N. Y. 709, 53 N. E. 1130.

But I do not wish to be understood as attacking the application on mere technical grounds. It may be assumed to be sufficient to call for a consideration of the relator's complaint. When, however, in considering the case upon the merits, it is relied upon for the facts which it states, it becomes legitimately the subject of close scrutiny. We have, then, on the one side, this application, such as it is, unaccompanied by any supporting proofs, and which, at best, expresses merely the opinion of the relator that his property has been overvalued; and, on the other side, the assessment itself, made under oath by the deputy tax commissioner, and presumably correct, together with his report supporting his action after a re-examination of the matter with the relator's complaint before him, and the judgment of the tax commissioners themselves upon the question. It may be said that upon the face of the record nothing more is disclosed than a conflict of opinion upon a question of real-estate value. It contains nothing from which the court can intelligently say that these officials were in error in fixing the assessment at the amount determined upon, or that the claim of the relator of overvaluation is any more entitled to recognition and acceptance than the judgment which the respondents have expressed to the contrary. The burden does not rest upon the latter to establish the legality or justice of their assessments. It is for the person claiming to be aggrieved—the one who makes the attack upon their action—to support his complaint by such a presentation of his case as will show by a preponderance of evidence that his claim is well founded. The policy of the court is not to interfere with the determinations of the taxing authorities, unless it is clearly made to appear that their action has been taken in violation of law, or contrary to the facts before them. As was said by Andrews, C. J., in People v. Barker, 144 N. Y. 94, 103, 39 N. E. 16:

"The commissioners had a right to act upon evidence outside of that furnished by the relator. In making inquiry and collecting the facts, they are not bound by the strict rules which govern ordinary judicial proceedings. If they act in good faith, upon their best judgment, upon reasonable grounds, and they do not err in the principle of assessment to the prejudice of the taxpayer, their decision cannot be overruled."

I do not agree with the counsel for the relator that under section 898 of the Greater New York charter it was the duty of the respondents, upon the mere presentation of the written petition, to cause testimony to be taken with respect to the complaint by a deputy tax commissioner upon notice to the relator. The construction contended for seems to be that the mere filing of the application requires the taking of testimony by the commissioners, or their deputy, with an accompanying obligation to give notice of such proceeding to the taxpayer. I do not think that this is ten-

able, but rather that the legislature intended to confer upon the deputy tax commissioners power to take testimony, and to make it their duty so to do when offered by the complaining taxpayer. It does not require the commissioners, or their deputy, to seek out the complainant, and to call upon him to submit testimony, but only to take such proofs as he may require to be taken. In other words, the initiative is still with the complaining party, and the burden continues to rest upon him of supporting his application by proper proof. The return in this case shows that no evidence in support of his application was submitted by the relator, and it nowhere appears or is claimed that any request or suggestion was made by him that any testimony should be taken. Under these circumstances the relator, upon the hearing of the writ, applied to the court to take evidence with respect to the matters of which he complained. That the court has the power to do so in a proper case is unquestionable. Section 4 of chapter 269 of the Laws of 1880 expressly so provided, and section 253 of chapter 908 of the Laws of 1896, known as the "Tax Law," contains such authority. But whether it should be exercised or not in an individual case rests in the sound discretion of the court. The statute last mentioned reads that:

"If upon the hearing it shall appear to the court that testimony is necessary for the proper disposition of the matter, it may take evidence or may appoint a referee to take such evidence as it may direct, and report the same to the court, with his findings of fact and conclusions of law, which shall constitute a part of the proceedings upon which the determination of the court shall be made."

The permissive nature of the provision is apparent. The relator cannot demand action under it as a matter of right, although it is freely conceded that, where it is plain that a proper disposition of the matter cannot be made by the court without such action, it would be its duty to avail itself of the authority thus conferred. But the real nature of the writ and its general purpose and character must not be lost sight of. Its primary function is to bring before the court the judicial determination of an inferior tribunal or officer for review upon the facts on which such determination was based. It is not a proceeding for a new trial in this court. It is true that the statute authorizes further proof to be taken when upon the hearing on the return it may appear to the court to be necessary to do so, but this is a mere incidental feature of the proceeding, importing a necessity, developed upon the hearing, for the ascertainment of some further fact or facts not embodied in the return, but deemed by it essential to a proper disposition of the matter. It would be unwise to attempt to define the occasions when such proofs should be taken. Obviously a case arises for so doing where, upon the hearing, it appears that the assessors have proceeded upon some erroneous theory, the extent of which, in its effect upon the assessment as a whole, further evidence is necessary to disclose. Doubtless, also, such an occasion would present itself where the proofs furnished by the aggrieved taxpayer and the statements in the return relied on by the commissioners in sup-

port of their action raise an issue of fact which, in the judgment of the court, should be the subject of inquiry. But, without attempting further illustrations, or, as I have stated, assuming to define all of the contingencies in which the court would deem itself entitled to resort to the power in question, I am quite clear that it should not be exercised where the necessity for supplementary proofs arises by reason of deficiencies in the record, caused by the inexcusable failure of the relator to properly submit. his case to the commissioners in the first instance. The consequences of any other rule than this would be grave indeed. Mere formal applications, perfunctorily made to the commissioners solely as a necessary basis for a writ of certiorari, would become frequent, with the expectation that the court would take the proof, and determine the amount of the assessment; thus not only adding to already overburdened calendars, but devolving upon the judges duties which it was not intended that they should perform or be concerned with until after the matter had been properly presented to the authorities constituted by law for the purpose of hearing such complaints, and relief had been denied. The law has given to the dissatisfied taxpayer the right to appeal to the commissioners for a revision of his assessment,—a right which must be exercised before he can come into court with his grievance,—and its expectation is that he will avail himself of the remedy thus offered in good faith, and will present to that body the facts which he claims support his complaint. This is due as well to them as to the court, which is in turn asked to review their action. In the present case there is nothing to show that the relator was not as able to furnish the commissioners with the evidence which he wishes to have taken here as he is now. If the return to the writ fails to bring up all that he desires to have before the court in order to impeach the assessment, it is due entirely to his failure to furnish such proofs when his application below was made.

In this connection it becomes desirable to consider the second ground upon which the assessment in question is attacked, namely, inequality. Until the new charter went into effect, no assessment in this department could be reviewed by certiorari on this ground, the New York City consolidation act (Laws 1882, c. 410, § 821) not permitting it. The new charter, however (Laws 1897, c. 378, § 906), which took effect on January 1, 1898, has extended the scope of the writ so as to cover such a case, following substantially the phraseology of the tax law (section 250, c. 908, Laws 1896) on the subject. It provides that:

"A certiorari to review or correct on the merits any final determination of the board of taxes and assessments shall be allowed by the supreme court or any justice thereof directed to the commissioners of taxes and assessments on the verified petition of the party aggrieved, but only on the grounds which must be specified in such petition, that the assessment is illegal, and giving the particulars of the alleged illegality, or is erroneous by reason of over valuation, or in case of real estate, that the same is erroneous by reason of inequality, in that the assessment has been made at a higher proportionate valuation than the assessment of other real estate on the tax-rolls of the city for the same year, specifying the instances in which such inequality exists, and the extent thereof, and stating that he is or will be injured thereby."

It will be observed that, where inequality is the ground of attack, the petition must state "the instances in which such inequality exists, and the extent thereof." The object of this undoubtedly was to guide the court in framing the writ, and to render it unnecessary for the respondents to certify up the entire assessment roll, or to make a return other than with respect to the instances mentioned. It does not of itself create a necessity for taking proofs in this court, or make such action any more obligatory than in cases where a review of the assessment is sought on other grounds. The section of the charter above quoted in each case requires the grounds on which the assessment is challenged to be specified in the petition in language appropriate to each particular instance. It was therefore as proper in this case as in any other that the relator should have presented to the respondents, in the first instance, the facts on which he relied in support of his claim, and his failure to do so must entail the same consequences. The original application to the commissioners utterly fails to set out any facts whatsoever tending to show any inequality in the assessment, despite their requirement that the relator should state them; nor was any proof whatsoever furnished by him in support of the bare statement that his property should not have been, in his judgment, valued at more than $69,000, to be in proportion to the assessed value of adjacent property. The court is under no obligation to take the proofs which could and should then have been furnished. The decision of the cause must rest upon what the return discloses. The relator complains of its meagerness and insufficiency. The answer to this is that he should have moved the court to compel a further return before bringing the writ on for hearing. Having failed to do so, he must be deemed to have been satisfied with it. As it is plain upon the record that nothing is shown which would justify the court in interfering with the assessment, the writ must be dismissed.

Writ dismissed.