(60 App. Div. 282.)

PEOPLE ex rel. EDEN MUSEE AMERICAIN CO., Limited, v. FEITNER et al., Tax Com'rs.

(Supreme Court, Appellate Division, First Department. April 29, 1901.)

TAXATION—CAPITAL STOCK.
    The selling price of the stock of a corporation is not conclusive of the value of its assets, for the purpose of taxation of its capital stock and surplus.

Appeal from special term, New York county.

Certiorari, on the relation of the Eden Musee Americain Company, Limited, against Thomas L. Feitner and others, commissioners of

taxes and assessments. From order dismissing the writ (68 N. Y. Supp. 149), relator appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Theron Davis, for appellant.

James M. Ward, for respondents.

O'BRIEN, J. The writ of certiorari was sued out by the relator to correct an assessment of 1899 made by the commissioners of taxes, amounting to $100,000, upon its capital stock and surplus. The relator is a domestic corporation with a paid-up capital of $330,000. On the second Monday of January, 1899, its capital consisted of a building erected 16 years ago on leased land at a cost of $243,929, and personal property to the amount of $31,400. There was on that date an indebtedness to the amount of $6,514. The real estate, consisting of the land and building No. 55 West Twenty-Third street, was assessed at $270,000, but the respondents show that, although the real estate as a whole was assessed at that sum, the valuation upon the land was $165,000 and on the building $105,000, and the commissioners in their return say:

"As we had included in the assets of the relator only the value of the building owned by it, and not the value of the leased property upon which such building was situated, we refused to deduct the assessed value of the said leased property, but did deduct the assessed value of the said building, namely, $105,000."

It will be noticed that the commissioners, in fixing the value of the capital and surplus, took the total gross assets of the relator, consisting of the building and the personal property, at $275,329, and allowed the only indebtedness claimed of $6,514, and also the assessed value of the building of $105,000, and found the taxable balance to be $163,815, and in reference thereto say:

"Notwithstanding the fact that the taxable balance of the relator's capital stock was $163,815, we fixed the assessment upon the said capital stock of the relator at $100,000, in order that no injustice might be done."

The special term decided that the tax thus imposed was right, and dismissed the writ of certiorari, and from the order entered thereon this appeal is taken.

Section 906 of the Greater New York charter, which is in line with section 250 of the general tax law, places upon one seeking to review and correct an assessment the burden of showing that he has been aggrieved; and therefore the question presented in this case, irrespective of the method by which the commissioners reached the result, is whether the assessment imposed is in excess of the actual value of the property sought to be taxed. People v. Barker, 66 Hun, 21, 20 N. Y. Supp. 797, affirmed 137 N. Y. 544, 33 N. E. 336; People v. Feitner, 54 App. Div. 217, 66 N. Y. Supp. 769. Thus it has, after much discussion, been finally decided that in determining such actual value the commissioners are justified in deducting only the assessed value of the real estate, and taxing as capital and surplus the difference between the assessed and the actual value as represented by cost. People v. Barker, 144 N. Y. 94, 39 N. E. 13;

People v. Barker, 23 Misc. Rep. 192, 51 N. Y. Supp. 1102, affirmed 31 App. Div. 315, 51 N. Y. Supp. 1102, 53 N. Y. Supp. 1111, and 158 N. Y. 709, 53 N. E. 1130; Jenkins v. Neff, 163 N. Y. 320, 57 N. E. 408. Whether or not the commissioners erred in determining the amount of capital and surplus which in the present instance is subject to taxation turns upon the value placed upon the building, and the refusal to deduct therefrom not alone its assessed value, but, in addition, what had been assessed against the land upon which it was built. Section 12 of the tax law expressly provides that "the capital stock of every company liable to taxation, * * * together with its surplus profits, * * * after deducting the assessed value of its real estate, * * * shall be assessed at its actual value." And under the construction given to this section it has been held that from the valuation of the gross assets which in part consist of real estate the deduction to be made with respect to the latter shall be its assessed value, and, therefore, that an assessment for capital and surplus, in which is comprised the difference between the actual and the assessed value of the real estate, is not illegal, nor does it constitute double taxation. Disregarding the land, therefore,—which did not belong to the relator,—upon which the building stood, the commissioners, for the purpose of taxation, had the right to estimate the building at its actual value, and to add the personal property, and from this amount deduct the assessed value of the building. This is precisely what the commissioners did, and, unless the value which they placed upon the building was erroneous, the relator is not aggrieved. On the hearing accorded, the relator had the opportunity to produce evidence of the value of the building, but, instead of furnishing any that was conclusive, contented itself, through its president, with giving testimony as to the actual value of its capital stock in different years, and with showing that its lease had only seven years to run, at the end of which time, unless the provision for a renewal for 20 additional years was accepted at an increased rental, the building would revert to the owners of the land at an appraised valuation. It was shown that the building was carried on the books of the company at cost. After hearing the evidence, the commissioners concluded that "the assets of the relator consisted of a building constructed at a cost of $273,329, and that said amount was the present value of the said building." It is true that there was no contradiction of the testimony of the president of the corporation that the value of the share stock had depreciated, which testimony is supported by the statement furnished to the commissioners to the effect that "during 1897 over one-third of the stock of this company was sold at prices ranging between 40 per cent. and 50 per cent. of the par value. During 1898 the highest price at which stock was sold was 60 per cent. and the lowest 40 per cent. of the par value. This is the first year in 10 years a 6 per cent. dividend has been paid. It was due largely to interest in war groups and war pictures." The value of the share stock, however, is not conclusive evidence of the value of the capital stock and surplus of a corporation. The selling price of the share stock is some, and in many cases where better evidence is not obtainable, may be satisfactory, evidence of the

value of the assets of a corporation; but it has never been held to be conclusive, and in the present instance we find in the same year a very wide difference in the prices at which the share stock was selling. Better evidence of the value of the capital stock and surplus is to obtain, where it can be done, the actual worth of such assets. As stated, it was competent for the relator to show on the hearing just what the building was worth. Instead, however, of producing any direct or conclusive evidence on this subject, the relator confined its efforts to showing at what price the stock sold. Against the inference of depreciation to be drawn from such testimony, we have the fact appearing that the building was carried on the books at cost, which, in the opinion of the commissioners, was its actual value in 1899. For the reason, therefore, that the relator failed to sustain the burden placed upon it of showing that it was aggrieved, we think the order appealed from should be affirmed, with costs. All concur; INGRAHAM, J., in result.