trial, before it was entitled to judgment. No proof of ownership, or of the making of any lease with the appellant, was made, and the refusal of the Municipal Court justice to dismiss the petition, upon appellant's motion, when the respondent rested its case, was error.

Judgment of the Municipal Court reversed, and a new trial ordered; costs to abide the event. All concur.

---

PEOPLE ex rel. NIAGARA FALLS HYDRAULIC POWER & MFG. CO. v. STATE BOARD OF TAX COM'RS.

(Supreme Court, Special Term, Erie County. November, 1909.)

1. TAXATION (§ 496*)—ASSESSMENT—REVIEW BY CERTIORARI—REVALUATION.
   On certiorari to review a special franchise assessment, the determination is a revaluation, and it may be a different valuation, of the property.
   [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 908; Dec. Dig. § 496.*]

2. TAXATION (§ 376*)—ASSESSMENT OF FRANCHISE—INCORRECT COMPUTATION AS GROUND FOR COMPLAINT.
   Though the computation of the tax commissioners in assessing a special franchise is incorrect, there is no ground for complaint if the valuation of the franchise, in its entirety, equals the assessment.
   [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. § 376.*]

3. TAXATION (§ 376*) — ASSESSMENT OF FRANCHISE — VALUATION OF CANAL CROSSING STREETS.
   In assessing the special franchise of a company, given the right to operate a canal across city streets, the tax commissioners properly valued its property rights in the streets as bearing the same relation to the total value of the canal as the number of lineal feet of the canal in the street crossings bears to the total number of lineal feet in the canal.
   [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. § 376.*]

4. TAXATION (§ 376*)—ASSESSMENT OF FRANCHISE—COST OF BRIDGES OVER CANAL AS ELEMENT OF VALUE.
   In assessing the special franchise of a company, given the right to maintain and operate a canal across city streets, the cost of bridges, by whomsoever paid, which it was required to erect and maintain over its canal, was chargeable to the franchise, as they are a part of the highway, and, in the absence of an agreement, the owner of the fee therein becomes the owner of all permanent structures placed therein, no matter by whom erected.
   [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. § 376.*]

5. TAXATION (§ 496*)—ASSESSMENT OF FRANCHISE—CERTIORARI—EFFECT OF LOWER SUBSEQUENT ASSESSMENT.
   In view of the rule that assessments adjudicated by the court are binding on the assessors in their future valuation of the same property, while the assessments made one year by the assessors themselves are not res judicata, a relator, in certiorari to review the assessment of a special franchise by the tax commissioners, cannot depend on the fact that it is higher than that of the succeeding year.
   [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 894; Dec. Dig. § 496.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. TAXATION (§ 376*)—ASSESSMENT OF FRANCHISE—RIPARIAN RIGHT PROCURED FROM FEDERAL GOVERNMENT.

The fact that a hydraulic power manufacturing company is compelled by Act Cong. June 29, 1906, c. 3621, 34 Stat. 626 (U. S. Comp. St. Supp. 1909, p. 1042), to procure a license from the Secretary of War to divert water from Niagara river, does not prevent the state from taxing such riparian right, in making a special franchise assessment, though the right to draw water from the river may be terminated by law.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 376.*]

7. TAXATION (§ 496*)—LOCAL ASSESSMENT—PROPERTY INCLUDED IN FRANCHISE ASSESSMENT—REMEDY.

The remedy, in case of an assessment, in violation of Tax Law (Consol. Laws, c. 60) § 49, of property covered by a special franchise assessment by the state board, which, by section 43, precedes the action of the local assessors, and is transmitted to them to be inserted in the local roll, is by proceeding against the local assessors, as what happens thereafter is not chargeable to the state board, and cannot be reviewed in certiorari against them.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 496.*]

Certiorari by the People, on the relation of the Niagara Falls Hydraulic Power & Manufacturing Company, against the State Board of Tax Commissioners. Writ dismissed.

Romer & Harrington, for relator.
Edward R. O'Mally and W. H. Cuddeback, for respondent.

MARCUS, J. This proceeding is brought to review the relator's special franchise assessment for the year 1908, which is described as being the right to maintain and operate a canal across certain streets in the city of Niagara Falls, and includes the relator's real estate in street crossings, and also the bridges across the canal at Buffalo avenue, Erie avenue, and Main street. The return further shows that the franchise was finally assessed as a whole, and that the amount thereof was not determined by the separate valuation of some of its elements.

The only issue between the parties to be considered is the value of the relator's special franchise. The proceeding is in the nature of a new trial of that issue. The determination of the court in a case of this character "is a revaluation, and it may be a different valuation, of the property assessed." People ex rel. Manhattan R. Co. v. Barker, 152 N. Y. 417–431, 46 N. E. 875; People ex rel. Knickerbocker S. D. Co. v. Wells, 181 N. Y. 245, 73 N. E. 961.

The relator has no ground of complaint, though the computation of the tax commissioners was incorrect, if, for example, they overvalued the bridges and undervalued the other parts of the property, provided the value of the franchise in its entirety equals the assessment. People ex rel. Equitable G. L. Co. v. Barker, 66 Hun, 21, 20 N. Y. Supp. 797, affirmed 137 N. Y. 544, 33 N. E. 336; People ex rel. Eden Musee v. Feitner, 60 App. Div. 282, 70 N. Y. Supp. 120. The authorities cited by the Court of Appeals in the Jamaica Water Works Case (recently decided) 89 N. E. 581, are to the same effect.

The power of the court is not limited by the relator's evidence, which attempts to bind the court to a valuation in detail of separate parts of

the franchise. The rule adopted in this case seems to be that the value of the relator's property rights in the streets bears the same relation to the total value of the canal as the number of lineal ·feet of the canal in the street crossings bears to the total number of lineal feet in the canal. There is authority for this rule of valuation. The court approved this method of valuing the track in one county of an extensive railroad system. State R. R. Tax Cases, 92 U. S. 575–608, 23 L. Ed. 663. The same rule was laid down in People ex rel. Buffalo & S. L. R. R. Co. v. Barker, 48 N. Y. 70. It has also been followed in assessing telegraph companies (Western Union Telegraph Co. v. Taggart, 163 U. S. 1–28, 16 Sup. Ct. 1054, 41 L. Ed. 49), express companies (Adams Express Co. v. Ohio State Auditor, 165 U. S. 194, 17 Sup. Ct. 305, 41 L. Ed. 683), and Pullman car companies (Pullman's Palace Car Co. v. Pennsylvania, 141 U. S. 18, 11 Sup. Ct. 876, 35 L. Ed. 613).

The testimony of the cost of reproducing the canal at the present time may be summarized as follows:

| | | |
|---|---|---|
| Length of canal between the basin at Port Day and the basin at the top of the cliff | 4,797 | feet. |
| The part thereof in the street crossings | 609.9 | " |
| Value of the land in the canal, based on the value of adjacent property | $125,000 00 | |
| Cost of excavation and masonry | 634,837 00 | |
| Total value of land and excavation in canal | $759,837 00 | |
| This total value, divided by 4,797, the length of the canal, gives as its value per lineal foot | $    162 30 | |
| The value per lineal foot, multiplied by 609.9, the number of feet in the crossings, gives as the value of the land and excavations in the crossings | 98,986 77 | |
| Add the relator's valuation of the bridges at Buffalo avenue, Erie avenue, and Main street | 50,163 57 | |
| This makes the total valuation of the lands and improvements in the crossings, on the basis of the value of adjoining property | $149,150 34 | |

This does not include anything for the riparian right or for the franchise, and, as will be observed, it is within $36,000 of the assessment. There is excluded the cost of the three bridges at Second street, Third and Niagara streets, and Fourth street, which, though built and maintained by the city under contract, are properly chargeable to the franchise or right of crossing. It makes no difference, so far as the assessment is concerned, who owns the bridges at these crossings. If the canal were not there, the bridges would not be necessary. The cost of the bridges, by whomsoever paid, is chargeable to the franchise or right to maintain the canal across the streets. The cost of the bridges is one of the elements to be considered in determining the value of the franchise or right of crossing. If the city takes the burden of constructing and maintaining any of these bridges, it does not lessen the value of the right to maintain the canal across the street. The bridges are a part of the highway. The rule of law is that the owner of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

fee becomes the owner of all permanent structures placed therein, no matter by whom erected. People ex rel. International Nav. Co. v. Barker, 153 N. Y. 98–101, 47 N. E. 46.

In that case, which related to a shed constructed on the wharf, Judge Gray said, when structures are erected by persons not the owners of the land, they become part of the realty, and as such the property of the landowner. "It requires an agreement to be expressed to prevent the operation of this rule." There is no agreement in this case which changes the rule. The contract of March 11, 1879, provides that the relator shall erect and forever maintain all three of these bridges. The contract of January 23, 1899, relates only to the Main street bridge, then under construction, and provides that the city shall contribute $2,000 in order to have the bridge made wider. Certainly that agreement does not affect the title to the bridge. The agreement of January 27, 1906, was made pending litigation between the relator and the city of Niagara Falls, which is not yet concluded; and it provides that it is made without prejudice, and should not be held or construed to in any wise change, alter, or modify the rights of the parties to the action. The rule above stated has not been changed by any of these contracts. If for any reason the streets should be abandoned, the relator would become the owner of the bridges at all the streets.

The relator cannot depend on the fact that this assessment for 1908 is higher than its assessment for the year 1909. The assessment in 1908 was $185,400, and in 1909 it was $64,000. My first impression, from a comparison of these estimates, has changed with a more careful examination of the figures, and that in view of the rule that assessments adjudicated by the court are binding upon the assessors in their future valuations of the same property (People ex rel. Warren v. Carter, 119 N. Y. 557, 23 N. E. 926); while the assessments made one year by the assessors themselves are not res adjudicata (People ex rel. N. E. D. Co. v. Roberts, 155 N. Y. 408, 50 N. E. 53, 41 L. R. A. 228).

The relator shows by a witness, Mr. Rumery, the engineer of the State Board, who was sent to make a re-examination and a revaluation of the relator's tangible property in the street crossings, that what he did examine he valued at more than the whole assessment of 1909. The total of his valuation is $69,884, or about $6,000 more than the whole assessment upon the whole property for the year 1909. The witness did not include the excavation at Second street, Third and Niagara streets, or Fourth street. He did not include the land value at any of the crossings, or the relator's riparian rights, nor the franchise or right to cross the streets. In fact, he omitted more of value than he included, and still his figures are higher than the assessment. His testimony does not show that the overvaluation of the bridges in the 1908 assessment made the assessment of the franchise in its entirety too high, but it does show that the assessment of 1909 was too low.

The fact that by virtue of the act of Congress passed June 29, 1906 (Act June 29, 1906, c. 3621, 34 Stat. 626 [U. S. Comp. St. Supp. 1909, p. 1042]), the relator is compelled to procure a license from the Secretary of War to divert water from Niagara river, does not prevent

the state from taxing the riparian right. Western Union Tel. Co. v. Attorney General of Massachusetts, 125 U. S. 530, 8 Sup. Ct. 961, 31 L. Ed. 790. Under sections 5263–5269 of the United States Revised Statutes (U. S. Comp. St. 1901, pp. 3579–3582) the Western Union Telegraph Company obtained permission to run its lines over all the post roads of the United States. (All highways are post roads.) The company claimed exemption from state taxation, because its rights were obtained from the federal authority. The court said:

"The company, receiving the benefit of the laws of the state for the protection of its property and its rights, is liable to be taxed on its real and personal property, the same as any other person would be. Agencies of the federal government are only exempt from state taxation so far as such taxation may interfere with or impair their efficiency in performing the functions by which they serve the government."

The court also held that the tax was not in violation of the commerce clause of the Constitution.

In Henderson Bridge Co. v. City of Henderson, 141 U. S. 679, 12 Sup. Ct. 114, 35 L. Ed. 900, it was held that the defendant city could tax a bridge over the Ohio river between Kentucky and Indiana. The court said:

"There is nothing in the suggestion that the taxation of the bridge is a regulation of commerce or any agency of the federal government."

The relator claims that its right to draw water from the Niagara river may be terminated by some change in the law. The fear of such interference does not stop the development of the relator's plant. The same argument was advanced by the same relator in the case of Niagara Falls Hydraulic Power & Manufacturing Company v. Smith, 70 App. Div. 543, 75 N. Y. Supp. 1100. Judge Childs said:

"Interference with the relator's rights by the state is a contingency too remote to require serious consideration."

This seems to be the greatest water power in the world. It will produce 130,000 horse power. The relator's plant was not completed when the assessment was made, July 1, 1908, to a capacity of 130,000 horse power; but the plans for power house No. 3 call for the installation of 13 units of 10,000 horse power each, and the work still proceeds to develop the plans. The value of the riparian right was shown to be $23,453,231, and the testimony of the engineers is at least instructive, even if not conclusive. A summary of the value of this riparian right and the apportionment, so as to give dollar for dollar to each and every part of the plant, is as follows:

| | |
|---|---|
| Value of riparian right | $23,453,231 00 |
| Cost of plant increased to a capacity of 130,000 horse power | 3,750,000 00 |
| Value of the part thereof included in the canal property as given above | 759,837 00 |
| Proportionate value of canal to completed plant, 20.3 per cent. | |
| Value of riparian right pertaining to canal | $4,761,006 00 |
| Value of riparian right pertaining to street crossings | 704,312 00 |
| Add value of land and improvements in crossings as given above | 149,150 00 |
| Total value of crossings, including riparian right | $ 853,462 00 |

· The relator complained on the trial that the local assessors of Niagara Falls had included the property covered by the respondent's special franchise assessment. If that is so, the act of the local assessors is in violation of the express provisions of section 49 of the tax law (Consol. Laws, c. 60), which prohibits them from taxing the tangible property included with the special franchise, and the relator's remedy is by a proceeding against the Niagara Falls assessors. The assessment of a special franchise by the State Board precedes the action of the local assessors, and is transmitted to them, to be inserted in the local roll (section 43, Tax Law). What happens thereafter is not chargeable to the State Board, and cannot be reviewed in a proceeding against them.

From a careful consideration of all the evidence presented, I am satisfied that the writ of certiorari should be dismissed.