## BESSEMER INV. CO. v. COMMISSIONER OF INTERNAL REVENUE.

Circuit Court of Appeals, Second Circuit.
March 4, 1929.

No. 119.

Cotton & Franklin, of New York City (Bernhard Knollenberg and Charles C. Parlin, both of New York City, of counsel), for petitioner.

Mabel Walker Willebrandt, Asst. Atty. Gen., Sewall Key and John Vaughan Groner, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Shelby S. Faulkner, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge. This appeal, taken pursuant to section 1001 (a) of the Revenue Act of 1926 (44 Stat. 109 [26 USCA § 1224a]) brings into question the determination of the Commissioner of Internal Revenue in fixing the income tax of the petitioner, a New Jersey corporation, for the taxable years 1918–1919. Petitioner, with other corporations, filed a consolidated return, and the Commissioner determined a deficiency of $11,281.92 for 1918 and $29,124.55 for 1919. The Henry Phipps Estate, a New York corporation, which filed its consolidated return with the petitioner on December 1, 1919, sold two properties in the city of New York for $1,039,850. It claimed to have sustained a loss on the sale of this real estate amounting to $89,497.73, whereas the Commissioner determined that it obtained a taxable profit of $279,241.80. The property was assessed in 1909 for $887,000. The taxpayer claims that its fair market value on March 1, 1913, was $1,250,000. The property was acquired in January, 1909, by Henry Phipps, the buildings thereon wrecked, and new buildings erected at a cost of $1,255,739.53—land and buildings. Thereupon the properties were conveyed to a corporation organized and known as the Henry Phipps Estate, and while it was carried on the books of Phipps at the cost price, it was carried on the books of the corporation, after its organization, at its assessed value—$887,000.

■ To overcome the admission so made, by the book entry of the corporation, evidence was offered as to its value in March, 1913. Such evidence should be considered, for the rights of the taxpayer should neither be established nor impaired by the bookkeeping methods employed by it. Douglas v. Edwards (C. C. A.) 298 F. 229. The admissions made by such book entries can be overcome by proof as to the true market value of the properties. It has been judicially noticed that real estate in New York is often assessed at values below its true worth. People ex rel. Equitable Gas Light Co. v. Barker, 144 N. Y. 94, 39 N. E. 13. There the court said: "* * * It is well known that * * * the taxation of real estate throughout the state is generally upon an assessment which represents but part of its actual value. Assessment at the full value is the exception and not the rule."

■ Considering the price at which the property was sold in 1919 and the assessed valuation at the time, the latter was but 67 per cent. of the selling price. The sale price is some evidence of its fair market value. Accepting the cost price of $1,255,739.53 to Mr. Phipps, with the deduction for depreciation of the building of $128,391.85 during the years of ownership, it would leave a residual cost basis of $1,127,347.73, and deducting the selling price would be a loss of $89,397.73, instead of a gain. An appraisal company's estimate of the values as of March 1, 1913, fixed the valuation at $1,234,681.39, but the competency of the expert witness to fix this value as the fair market value is not shown. Competent experts, who could assist the Board of Tax Appeals in fixing a fair market value, are easily obtainable and should be called as witnesses. We shall reverse this determination, and refer the matter to the Board of Tax Appeals, affording opportunity to both the taxpayer and the Commissioner to offer competent proof as to the fair market value of the properties on March 1, 1913.

■ The board held that the taxpayer sold shares of stock of the New England Company in 1919 and realized a taxable profit therefrom of $15,861.06. On January 1, 1919, on its books, the taxpayer credited its New England Company's common stock account with 427⁹⁄₂₀ shares of said stock and debited Messrs. Moore and Chace with $9,341.57 and $6,900.77, respectively. The Commissioner contended that this transaction reflected by the book entries consisted of the sale of the shares involved. The books show that the first block of the New England Company's stock of 2,250 shares was acquired by it at a cost of $1 per share and it held that the cost basis of the shares transferred was only $427.45, and that the petitioner's taxable profit from the sale was equal to the difference between this sum and the total of the debits of Moore and Chace. It is clear that this was but a book adjustment, transferring

the accounts of Moore and Chace of certain common stock of this company, which the petitioner had in the first instance purchased on their behalf. The notations in its ledger show this. They read:

"See letter D. T. M. 7/30/17. We agree to carry for Mr. Moore $10,000 worth of stock. 20% of purchases after 7/30/17."

"Chace receives 25% of purchases after November 7/17 up to 250 shs."

The journal entries show the number of shares of the New England Company's common stock transferred to Moore and Chace on January 1, 1919, were precisely the same which the petitioner was required to hold for the account of Moore and Chace under the agreement with Moore and Chace referred to in these notations. The amounts debited to Moore and Chace, respectively, on account of the shares transferred to them, were based on the average cost per share of the shares purchased by the petitioner during the respective periods covered by the notation. Evidence of the market value of the New England Company's stock on the day before the transfer was $42 per share. The journal entries showing the transfer to Moore was at $39.717 per share, while the transfer to Chace was $35.89 per share. Interest charges of 5 per cent. were made. There is testimony that it was the practice of the petitioner to purchase and carry stock and other securities for the account of persons associated with it. These notations and explanations make clear the transaction. The petitioner agreed to carry for Moore 20 per cent. of its $50,000 purchase of the common stock of the New England Company after July 30, 1917, and for Chace 25 per cent. of its first 1,000 shares of the common stock of the New England Company purchased after April 2, 1917. The taxpayer bought in the common stock of the New England Company until February 1, 1918, as of which date its last purchase was made. From July 1, 1917, to February 1, 1918, the taxpayer purchased 1,176 shares, costing $46,707.85. Twenty per cent. of these shares is 235⅕ shares, and the cost $9,341.51. The book entries show this number of shares, and the account was debited for this amount. From November 2, 1917, to February 1, 1918, the taxpayer purchased 769 shares at a cost of $27,603.08, 25 per cent. of which is 192¼ shares, and the cost $6,900.77. The entries of Chace's account represent these items, and this explanation is the only one consistent with the book entries and unquestionably represent the transactions. The findings of the Board of Tax Appeals as to these items must be reversed.

The order appealed from is reversed, and referred to the Board of Tax Appeals for further consideration, not inconsistent with this opinion.